No. 84–5247. RAULERSON *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS. C. A. 11th Cir. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

In *Faretta* v. *California*, 422 U. S. 806 (1975), this Court held that a defendant in a state criminal trial has a right under the Sixth and Fourteenth Amendments to proceed without counsel if he clearly and unequivocally asks to do so. In this case, the petitioner made a motion to represent himself in which he cited *Faretta*. According to *Faretta*, when such a motion is made, the court must assure that the petitioner understands the dangers of his decision, and that the decision is knowing and voluntary, and then rule on the motion. The state trial court, however, did not make such an inquiry and effectively denied the motion. Reviewing the District Court's denial of a petition for habeas corpus, the

Federal Court of Appeals held that the state trial court had not committed reversible error because events *subsequent* to petitioner's assertion of the right demonstrated that petitioner's initial request was ambiguous. 732 F. 2d 803 (CA11 1984). The analysis of the Court of Appeals reflects a fundamental misunderstanding of the nature of the right guaranteed by *Faretta*. I, therefore, dissent.

## I

The facts of this case are not in dispute. Petitioner James David Raulerson was convicted of first-degree murder and sentenced to death. His death sentence was stayed by a Federal District Court, 508 F. Supp. 381 (MD Fla. 1980), and a second sentencing hearing was scheduled to be held in state court. Before the second sentencing hearing, petitioner expressed considerable dissatisfaction with his attorney, and the attorney asked the court's permission to withdraw. The court denied the motion. Thereafter, on July 15, 1980, three weeks prior to the second sentencing hearing, Raulerson asked the trial court to permit him to act as *co*-counsel with his attorney. The court denied his motion. Next, on July 18, petitioner wrote a letter to the trial judge specifically requesting permission to appear *pro se:*

> "Upon calling [court-appointed counsel] Mr. Busch today I am met with cold indifference. . . .
> "With these things to your attention I wish to make motions to:
> "1. appear pro se (Faretta vs. California) 95 S. Ct. 2525. . . . I cannot persist being no part of my defense. . . ." Pet. for Cert. 9.

The state court provided a copy of the letter to counsel and did nothing more. At the start of the sentencing hearing, the trial judge told Raulerson that under Florida law he could appear as co-counsel and that if he "continues to wish to participate in the representation of himself," *id.*, at 6, he would allow him to participate as co-counsel. In other words, the trial judge instructed Raulerson precisely to the contrary of what the law is, indicating that he could not proceed on his own but could proceed as co-counsel. Later in the hearing, the trial judge reversed himself and held that Raulerson could not even participate as co-counsel. Also at the sentencing hearing, counsel asked for a continuance and informed the court that he was not prepared to proceed; at

the end of the hearing, counsel stated that he was too exhausted and unprepared to give a closing argument. Raulerson, of course, had been denied the right to act as his own counsel. *As a result, no argument against the death penalty was presented on Raulerson's behalf.*

The court sentenced petitioner to death. About six months later, in February 1981, the court held a hearing to consider petitioner's desire to discharge counsel for refusal to pursue the *Faretta* issue on appeal. At that time, the court began an inquiry such as that required by *Faretta*. In the course of the hearing, Raulerson walked out.

On the basis of the foregoing, when the Court of Appeals for the Eleventh Circuit reviewed the denial of Raulerson's habeas petition, it concluded that Raulerson failed to make an unequivocal assertion of a right to relinquish counsel prior to February 1981. 732 F. 2d, at 808. The court noted that Raulerson did not "diligently" pursue his initial motion after it was filed, and that he did not renew his request. On this point, the court did not consider the effect of the trial judge's ruling, in response to Raulerson's *Faretta* motion, that *at best* Raulerson might have a right to proceed as co-counsel. Finally, the Court of Appeals observed in passing that even if the assertion of the right to self-representation was unequivocal it was waived when Raulerson proceeded with counsel. Again, the Court of Appeals did not acknowledge that the state trial judge had told petitioner that at most he could participate as co-counsel, and that even that ruling later was reversed. Nor did the appeals court suggest what other course petitioner might have followed at that time, after he was told that he could, at most, act as co-counsel.

A dissenting member of the panel concluded that "the failure of the trial court to respond affirmatively to [Raulerson's] demand for the right to represent himself as required in *Faretta* was an absolute and final denial of that right which was not waived by his subsequent conduct." *Id.*, at 814 (Tuttle, J.). Judge Tuttle further pointed out that it was not reasonable to characterize the petitioner's position as ambiguous when "[w]hatever vacillation appears in the record as it now stands was . . . the fault of the trial judge, whose vacillation could hardly be expected to have been treated by a non-lawyer defendant any differently than it was." *Ibid.* Moreover, as the dissent reasoned, "[u]nless we can assume that Raulerson would have acted the same way if the trial court, in response to his first demand, had undertaken in a proper manner to acquaint him with the problems he faced, then it seems

to me that the trial court's failure to hold such a hearing could not be deemed as being ratified because six months after the sentencing hearing, he acted in the manner in which he did." *Ibid.*

To my mind, there can be no dispute that Raulerson clearly and unequivocally asserted his right to proceed *pro se* before the sentencing hearing and was denied that right. The majority's *post hoc* rationalization for the trial court's failure to engage in a *Faretta* inquiry at that point makes a mockery of the right recognized by this Court.

## II

The exercise of the right recognized in *Faretta* entails a concomitant waiver of the right to counsel expressly guaranteed by the Sixth Amendment. Accordingly, we indicated in *Faretta* that defendants should be permitted to exercise their right of self-representation only if they execute a valid waiver of their right to counsel, which is to say, only if they "'knowingly and intelligently' forgo [the] relinquished benefits" of counsel. 422 U. S., at 835 (citing *Johnson v. Zerbst*, 304 U. S. 458, 464–465 (1938)). Further, we held, judges are to assure that defendants are made aware of the "dangers and disadvantages of self-representation," 422 U. S., at 835, before permitting them to relinquish counsel. In other words, since a defendant must act affirmatively to relinquish the right to counsel, it follows that the right of self-representation must affirmatively be asserted as well. We thus have emphasized that courts should not bend over backward to hold that a defendant, who merely hints that he might be better off representing himself, has waived his right to counsel. Cf. *Brewer v. Williams*, 430 U. S. 387 (1977) (mere failure to request counsel does not result in waiver of right to counsel).

These precautions, which are so necessary to protect the right to counsel, may not be permitted to eviscerate the right of self-representation. Just as we must be watchful not to find a waiver of the right to counsel where none was intended, so must we be cautious not to overlook an asserted right to proceed *pro se* in our well-meant effort to protect the right to counsel. Accordingly, in *Faretta* we indicated that a defendant's clear and unequivocal assertion of a desire to represent himself must be followed by a hearing,[1] in which he is "made aware of the dangers and disad-

---

[1] This rule of course would not apply mechanically to repetitive motions, motions designed to obstruct, or motions that are made at inappropriate times. The issue does not arise here, since petitioner filed his motion well

vantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U. S., at 835. A *Faretta* hearing offers a court ample opportunity to assure that a defendant understands and accepts the consequences of his decision, and to create a record to support its finding of a knowing waiver. As a result, once a defendant affirmatively states his desire to proceed *pro se*, a court should cease other business and make the required inquiry. It is through this hearing that the right to counsel is protected.

The foregoing makes clear, then, that if a trial court judge holds a *Faretta* hearing when the accused clearly asserts his desire to proceed *pro se*, the result will not do harm to the right to counsel. At the same time, the *failure* to hold a *Faretta* inquiry at this time *will* do injury to the right recognized in *Faretta*. Delay in holding a hearing after the right is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust. For that reason, a *post hoc* effort to construe as subsequently ambiguous a clear assertion of a desire to proceed on one's own, such as that undertaken by the Court of Appeals in this case, contravenes the right. It encourages courts to leave a *Faretta* motion pending, in the hope that the request will eventually be construed as ambiguous. It therefore follows that sufficient protection of the *Faretta* right may only be achieved if the trial court is required to hold a hearing when the right is asserted. On review, a court need look only to the character of the assertion, and not beyond, to assure no error was committed.[2]

Lower courts generally have agreed that the character of the assertion itself, and not subsequent developments, determines whether there has been a sufficiently clear request to proceed *pro se*. See, *e. g.*, *Brown* v. *Wainwright*, 665 F. 2d 607, 611 (CA5 1982) (en banc). If a request is ambiguous, the trial judge need not respond, because there has been no clear indication of a desire

---

before the sentencing hearing began, and there is no suggestion that he acted for any inappropriate reason.

[2] The State points out in its opposition to the petition that courts have found waiver of the right to proceed *pro se* on the basis of subsequent occurrences. In those cases, however, the reviewing courts found an assertion of the right followed by a waiver; they did not find that the right was never asserted.

to waive a right to counsel. If the request is clear, however, a *Faretta* hearing must follow, to assure that the defendant is not required to proceed with the unwanted assistance of counsel. Viewed on its own, Raulerson's original request to proceed *pro se* was as unambiguous as such a request can be. Under the analysis of these other courts, he therefore was denied the right of self-representation. Thus, the Court of Appeals' *post hoc* rationalization of the trial court's failure to engage in a *Faretta* inquiry is not only at odds with the holding and spirit of *Faretta*, but also with lower court opinions construing *Faretta*. I therefore dissent from the Court's decision not to review the judgment of the Court of Appeals.

### III

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring). But even if I accepted the prevailing view that the death penalty may be constitutionally imposed under certain circumstances, I would grant this petition for the reasons set out above.