[No. A043899. First Dist., Div. Three. Aug. 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRANCE L. KENNER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Scott J. Drexel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan, Aileen Bunney and Christopher Wei, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STRANKMAN, J.**—Appellant Terrance L. Kenner was convicted by a jury of possession for sale of cocaine base, in violation of Health and Safety

Code section 11351.5. Appellant contends that the judgment must be reversed because the trial court inadvertently failed to hold a hearing on his timely motion under *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] to represent himself. We conclude that reversal is not required because appellant's postmotion conduct establishes that he abandoned his request for a *Faretta* hearing. We affirm the judgment.[1]

## I. Appellant's *Faretta* Motion

■ A criminal defendant who is competent can waive the right to counsel and represent himself. (*Faretta* v. *California, supra,* 422 U.S. at pp. 807, 819-821 [45 L.Ed.2d at pp. 566, 572-574].) When a defendant has timely moved to represent himself, the trial court must determine whether the defendant's election is voluntary and intelligent. If those conditions are satisfied, the trial court must allow the accused to represent himself. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].) Appellant contends the trial court committed reversible error because it failed to hold a hearing on his motion to invoke his constitutional right to represent himself under *Faretta*.

A close and detailed examination of the record is essential to assess appellant's contention.[2] Counsel was appointed for appellant in January 1988. On February 18, a hearing was held in San Mateo County Superior Court on appellant's motion for new counsel; after that motion was denied, appellant moved to represent himself. Without question his *Faretta* motion was both timely and unequivocal, and the trial court appropriately set the matter for hearing on March 1, at appellant's request, and continued the trial date.[3]

On March 1, when the *Faretta* hearing was called, appellant was not present, because he was in custody in Santa Clara County on another matter. Thereafter, he missed three more hearing dates, March 7 and 23 and April 1, as a result of that custody status. On March 23, defense

---

[1] Appellant also alleges that he was denied effective assistance of counsel; we discuss that contention in a portion of this opinion not certified for publication. Appellant has filed a petition for habeas corpus, repeating his ineffective assistance of counsel claims. That petition has been consolidated with this appeal for purposes of argument and briefing. We deny the petition today by separate order.

[2] The facts underlying appellant's offense are not relevant to the *Faretta* issue, and are set forth later, in our discussion of appellant's ineffective assistance of counsel claims.

[3] When the prosecutor expressed concern about the effect of delaying the *Faretta* hearing on appellant's right to a speedy trial, the court stated that it could hear the matter that afternoon. Appellant himself objected, stating that he was not ready right now, and wanted the *Faretta* hearing after the 29th. Appellant and the trial court also discussed whether he would be entitled to a continuance if he represented himself.

counsel told the court that appellant was "kind of concerned with trying to get his own attorney here, retained attorney." Counsel also told the court the name of the attorney with whom appellant had been in contact.

When appellant finally did appear on May 18, defense counsel stated: "Basically at the time Mr. Kenner was removed to Santa Clara County we were in the [throes] of a motion. However, I think we can reserve that motion at the present time until we have another pretrial on this matter." The court reset the matter for trial and confirmed the appointment of the defense counsel. Appellant himself did not mention his *Faretta* motion.

On June 14, appellant was present when counsel asked to continue a hearing on his motion to strike certain enhancement allegations. After appellant personally waived time for trial, the court continued the motion and reset the trial date. Appellant did not mention his *Faretta* motion.

On July 7, appellant was present when hearing on the motion to strike and the pretrial conference were continued at defense counsel's request. On July 12, appellant was present when the motion to strike was heard and denied, and the trial date of July 18 was confirmed. On July 18, appellant was present, was sworn, and testified, apparently in conjunction with proceedings on a Code of Civil Procedure section 170.6 challenge. There is no indication that appellant mentioned his *Faretta* motion at any of these proceedings.

The case trailed until July 25. Both in the morning and the afternoon, the court considered appellant's pretrial motions. Although appellant spoke in response to questions by the court at both sessions, and admitted the enhancement allegations, he did not mention his *Faretta* motion. At the conclusion of the afternoon session, the court stated, "Okay. I don't think we need to do anything else." Appellant remained silent.

During the three days of the jury trial, appellant did not mention his *Faretta* motion. The matter was never mentioned again until his opening brief was filed in this court.

■ Appellant contends the court's failure to rule on his timely *Faretta* motion is reversible per se. From this record, it is apparent that the motion was not acted upon due to the confusion caused by appellant's changing custody situation. Thus the case presents a stark judicial choice: who should bear the burden of the omission—the trial court or the mysteriously silent defendant? By urging that the judgment must be reversed, appellant would absolve himself of any vestige of responsibility. That position is not justified by either the law or the facts.

Drawing an analogy to the right to counsel, appellant insists that when a defendant has invoked his right under *Faretta* to represent himself at trial, a waiver of that right cannot be presumed from a silent record or the defendant's subsequent conduct. The analogy is flawed because it overlooks significant differences between the two rights. For instance, defendants must be advised of their right to counsel, but not of their right to represent themselves under *Faretta*. (*People* v. *Salazar* (1977) 74 Cal.App.3d 875, 887-889 [141 Cal.Rptr. 753]; *People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 861 [149 Cal.Rptr. 47, 2 A.L.R.4th 485]; Annot., Accused's Right to Represent Himself in State Criminal Proceeding—Modern State Cases (1980) 98 A.L.R.3d 13, 30, § 6 and cases cited.) As a result, routinely the right of self-representation is impliedly and silently waived.

Although the question here may not yet have been considered by a California court, courts in other jurisdictions have concluded that a defendant's conduct may amount to a waiver or abandonment of the right of self-representation. (See Annot., Accused's Right to Represent Himself, *supra*, 98 A.L.R.3d 13, 31, § 7 and cases cited.) Principal among those cases is *Brown* v. *Wainwright* (5th Cir. 1982) 665 F.2d 607, in which the Fifth Circuit majority, sitting en banc, squarely held that after a defendant has asserted the right of self-representation, a waiver may be found if it reasonably appears from the conduct of the defendant that he has abandoned his request to represent himself. (*Id.*, at p. 611.)

In *Brown*, appointed counsel moved to withdraw after defendant indicated he wanted to represent himself. A hearing was held, but the court deferred its ruling and asked counsel to see whether his differences with his client could be worked out. Counsel then informed the court that those differences had been resolved, and that defendant had changed his mind and wanted counsel. Defendant worked with counsel and an investigator to prepare a defense, but on the third day of trial, he unsuccessfully renewed his request to represent himself. Later, defendant sought habeas corpus relief on the ground that he was denied his right to represent himself. (*Brown* v. *Wainwright, supra*, 665 F.2d at pp. 609-610.)

Comparing the right of self-representation and the right to counsel, the majority in *Brown* reasoned that while the right to counsel is in force until waived, the right of self-representation does not attach until asserted. The majority explained: "The important distinction in the manner in which the two rights come into play requires that a different waiver analysis be applied to the right of self-representation than to the right to counsel. Unlike the right to counsel, the right of self-representation can be waived by defendant's mere failure to assert it. If on arraignment an indigent defendant stands mute, neither requesting counsel nor asserting the right of self-

representation, an attorney must be appointed. Even if defendant requests to represent himself, however, the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether. [Citations.] . . . [¶] The right of self-representation, then, is waived if not asserted, while the right to counsel is not. Since the right of self-representation is waived more easily than the right to counsel at the outset, *before* assertion, it is reasonable to conclude it is more easily waived [than the right to counsel] at a later point, *after* assertion. Therefore, the cases cited by defendant which establish stringent requirements for waiver of counsel . . . do not apply in full force to the right of self-representation. A waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." (*Brown* v. *Wainwright, supra,* 665 F.2d at pp. 610-611.)

The *Brown* majority also held that although in some cases a "personal dialogue" between the court and the defendant may be advisable to determine whether there is a waiver, no such inquiry is necessary where all circumstances indicate that the defendant has abandoned his request to conduct his own defense. (*Brown* v. *Wainwright, supra,* 665 F.2d at pp. 611-612.) The court concluded that defendant's subsequent conduct after his initial request to represent himself supported a finding of waiver. In part, the court noted that after the initial hearing, defendant did not inform the trial court of his continuing desire to conduct his own defense, despite opportunities to do so. (*Id.,* at p. 611.)

The United States Supreme Court has itself indicated that a waiver of the right of self-representation may be presumed from conduct. In *McKaskle* v. *Wiggins* (1984) 465 U.S. 168 [79 L.Ed.2d 122, 104 S.Ct. 944], defendant's motion to proceed pro se was granted, but the court also appointed standby counsel. Both before and during trial, defendant frequently changed his mind about standby counsel's participation, sometimes objecting to that participation, but sometimes soliciting counsel's help. After his conviction, defendant urged that standby counsel's conduct had deprived him of his *Faretta* right to present his own defense. Rejecting that argument, the court reasoned in part, "A defendant can waive his *Faretta* rights. . . . [¶] . . . Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be *presumed* to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." (*McKaskle* v. *Wiggins, supra,* at pp. 182-183 [79 L.Ed.2d at p. 136], italics added; see also *State* v. *Bebb* (1987) 108 Wn.2d 515 [740 P.2d 829, 835] [defendant granted right to represent self; standby counsel appointed; two weeks before trial, defendant asked to have standby counsel appointed as

cocounsel, thereby showing he voluntarily waived his right to proceed pro se and reclaimed his right to counsel].)

We consider the foregoing authority persuasive and hold that a defendant's conduct may indicate an abandonment or withdrawal of a request for a *Faretta* hearing.

In the present case, the record establishes that appellant had ample opportunity to call the court's attention to the neglected *Faretta* motion, but did not. Unlike the defendant in *Brown v. Wainwright, supra,* 665 F.2d 607, who renewed his *Faretta* motion mid-trial, once defendant in this case was returned from Santa Clara County to San Mateo County, his conduct throughout the proceedings indicated unequivocally that he agreed to and acquiesced in being represented by counsel. Although he spoke more than once, he said and did nothing suggesting any dissatisfaction with counsel's representation.

One interpretation of this record is that appellant realized that the trial court forgot the *Faretta* motion in the confusion resulting from his custody situation, and slyly saved his *Faretta* ace to play triumphantly on appeal. The record does not clearly establish any such cunning strategy; however, if it did, the gamesmanship should not be rewarded. The record also strongly suggests that appellant made the *Faretta* motion to buy time, got that time, and abandoned the motion. But our view of these facts is simply that appellant had second thoughts about the wisdom of representing himself and abandoned the idea.

Defendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, as here, we believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion. Therefore, we hold that on this record, where appellant had both time and opportunity to follow up on his request for a hearing on his *Faretta* motion, and failed to do so, he must be deemed to have abandoned or withdrawn that motion.[4]

---

[4] We recognize that in a declaration attached to his habeas petition, appellant asserts that he was not given an opportunity to speak on May 18 (when he was first returned from Santa Clara County) and that he never withdrew his *Faretta* motion and still wanted to represent himself. However, the record indicates that appellant had numerous opportunities thereafter to mention the *Faretta* motion but did not do so; he should not now be rewarded for his silence.

## II. Ineffective Assistance of Counsel*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## III. Disposition

The judgment is affirmed.

Merrill, J., concurred.

**WHITE, P. J.,** Dissenting.—I would reverse the judgment and remand the case for a new trial. As I see the record made on February 18, 1988, it is true that Kenner's request to act as his own attorney was "both timely and unequivocal." (Maj. opn., *ante*, p. 58.) Clearly, then, Kenner did not misuse the *Faretta* (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) mandate as a means to unjustifiably delay his trial scheduled for February 29, 1988, or to obstruct the orderly administration of justice. (See *People* v. *Windham* (1977) 19 Cal.3d 121, 128, fn. 5 [137 Cal.Rptr. 8, 560 P.2d 1187].) Moreover, given the fact that it was adamantly and unequivocally asserted within a reasonable time prior to the date assigned to commence his trial, Kenner's *Faretta* request did not address the trial judge's exercise of sound discretion in determining whether to grant or deny the motion. We know the federal Supreme Court decided in 1975 that under the Sixth and Fourteenth Amendments, competent criminal defendants may knowingly and intelligently waive their right to the assistance of counsel and manage their own defense. (*Faretta* v. *California, supra*, 422 U.S. at pp. 807, 819-821 [45 L.Ed.2d at pp. 566, 572-574].) The *Faretta* court indicated that Kenner should be permitted to represent himself when he of record executed a valid waiver "knowingly and intelligently" relinquishing many of the traditional benefits associated with the right to the assistance of counsel. Further, the *Faretta* court directed the trial judge in Kenner's case to make Kenner aware of the dangers and disadvantages of self-representation, so that the record will establish that " 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (See *Faretta, supra*, at p. 835.) In addition, of course, our state Supreme Court, intending to procedurally implement the constitutionally mandated unconditional right of self-representation, held that "when a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Furthermore, the defendant's 'technical legal knowledge' is irrelevant to the court's

---

* See footnote, *ante*, page 56.

assessment of the defendant's knowing exercise of the right to defend himself. [Citation.]" (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, cited in *People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].)

The trial judge, on February 18th's 11 a.m. calendar, denied Kenner's *Marsden* (*People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44]) motion. Given the record made during the 20-minute *Marsden* hearing, the judge properly exercised his discretion. From Kenner's perspective, however, the judge's denial meant that he would be defended at trial by an appointed attorney "who I felt like I have no confidence in, I felt like I have no trust in, . . ." Consequently, a not at all uncommon happening occurred, i.e., Kenner announced that he would like to act as his own attorney, "Because I'm really adamant about this, because I feel my back is against the wall."

From his considerable knowledge of and experience with the law of criminal procedure, the trial judge undoubtedly knew that once Kenner timely asserted his *Faretta* right, there remained but one determination that he must make. "The only determination a trial court must make when presented with a timely *Faretta* motion is whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action." (*People* v. *Joseph, supra,* 34 Cal.3d at p. 943, internal quotation marks omitted.)

The record dated February 18, 1988, exposes that the trial judge receiving Kenner's timely asserted *Faretta* motion erroneously decided that he personally would not preside over Kenner's *Faretta* hearing. Instead, he continued the *Faretta* hearing so as to be presided over by a different judge at a time "in close proximity to trial." (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5; *People* v. *Ruiz* (1983) 142 Cal.App.3d 780, 790 [191 Cal.Rptr. 249].) It appears that the judge continued the hearing logically, reasoning that Kenner's *Faretta* request spoke as of February 18, when invoked. However, our state Supreme Court in *People* v. *Moore* (1988) 47 Cal.3d 63 at page 80 [252 Cal.Rptr. 494, 762 P.2d 1218] citing *People* v. *Turner* (1984) 37 Cal.3d 302, 312 [208 Cal.Rptr. 196, 690 P.2d 669], ruled that a *Faretta* motion is to be decided on the facts as they appear at the time of the hearing.

The case law teaches, and it bears emphasis, that on February 18, 1988, at 11:20 a.m., Kenner asserted the right of self-representation recognized in *Faretta*, that is to say, his right of self-representation was "constitutionally mandated" and "unconditional," (*People* v. *Windham, supra,* 19 Cal.3d at pp. 127-128) and not subject to the judge's discretion to grant or deny.

My thesis, then, is that at high noon, more or less, on February 18, the trial judge, perhaps unwittingly, committed *Faretta* reversible per se error, the same as is if he had denied the motion on February 18, as being untimely or because Kenner's election to represent himself was not voluntary and intelligent. By continuing hearing on the motion to March 1, a time "in close proximity" to March 7, the date of trial commencement, the case law teaches that Kenner's *Faretta* request was placed in jeopardy as arguably being "within that period of time contemplated by *Windham* in which the [hearing judge] may exercise [his] sound discretion in considering whether to grant or deny the motion." (See *People* v. *Ruiz, supra*, 142 Cal.App.3d at p. 791.) No one can seriously argue that a *Faretta* is not a disfavored motion in our state perhaps second only to a motion to exclude relevant but illegally state-seized evidence.

My reasoning: Initially, the judge responded to Kenner's plea to proceed pro se as I quote from the record at page 19, to wit: "I'm going to—I'm not going to hear that now. It's now almost 20 minutes to 12:00. We spent 20 minutes on your last motion." Addressing the deputy district attorney upon reentering the courtroom, "The record should reflect the Marsden motion was denied and just as you were on your way in he made a motion for—Faretta motion, which I'm going to have heard next week."

Reminded by the prosecution that "trial is set for February 29," the judge said: "I'll do this. I'll vacate the present trial date, the 29th, and continue it for trial on March 7. Frankly, that's a little better for the court calendar. Got tons of cases set on both days. A little less—fewer tons on the second date."

Then the prosecutor, apparently intending to goad Kenner, volunteered as regards the plea bargain, i.e., six years in light of nine or ten years' exposure, "But it won't be there the morning of trial." Kenner understandably took the bait: "I'd like to answer to that. I refuse to deal. Can I say that?" Kenner then proceeded to ask the only pertinent question to his way of thinking, that is, "When will my motion be heard, your Honor?"

The court suggested "the best day next week." Kenner's appointed counsel then *trusted* that he did not have to be present. He was going on vacation. The prosecutor correctly surmised: "He does have to be there, I think."

The trial judge: "Let's put it on for the following week . . . ." The People's attorney then obliquely raised the issue of timeliness. The trial judge's response reasoned as I quote: "He's got two weeks before trial he's made the motion now, so the motion would have to speak as of this date,"

that is to say February 18, 1988. The court continued: "He has to point out to the judge he made the motion today. For the convenience of court and counsel it was continued beyond today, so that he can't be charged with the time between now and the time that his hearing is held. *I have to stop everything. I'm not finished with the calendar yet. I don't have time nor the inclination to take a Faretta motion right now.*" (Italics added.)

Mr. Wagstaffe, the deputy district attorney, then suggested to the court: "[W]hereas if you were to hear it today, with two and a half weeks to go to trial, you could conclude sure he can go ahead and represent himself, and not deny the motion. Then that would give him adequate time to prepare." The court declined, stating, "You're saying I could hear it today, grant it and still try the case on March 7 . . . . [¶] But I'm not going to."

Readily apparent, then, the trial judge remained fixed in his determination to continue Kenner's timely *Faretta* request for hearing for, as he had earlier observed, "the convenience of court and [defense] counsel." However, Kenner soon saw and heard the judge recant in response to Deputy Wagstaffe's disingenuous argument that he was "worried about [an] appellate court down the road saying because it wasn't heard today he had to be forced to his choice of giving up a right to speedy trial—" The court responded: "I can hear it at 1:30 this afternoon."

The court's majority opinion, *ante*, at page 59, and in footnote 3 on page 58, leaves the reader with the impression that Kenner objected to his *Faretta* request being heard at a time when it must be granted by the judge; and further that he requested a date after "the 29th," a date arguably placing his motion at the risk of denial in the sound exercise of discretion. Earlier, on page 58 of the majority opinion, they conclude therefore that "the trial court appropriately set the matter for hearing on March 1." I, of course, vehemently disagree. Because the record's interpretation is, in the final analysis, in the eyes of and to some extent the predisposition of the beholder, I set out page 24 of 26 pages of record made on February 18, 1988, to wit:

"THE COURT: At 1:30 we will hear your motion under Faretta vs. California. That's a motion to represent yourself.

"THE DEFENDANT: Your Honor, what if I told you I wasn't ready to do that right now? Am I compelled? Do I have to do it today?

"THE COURT: No. Matter or fact, if you don't do it today, to bring this full circle, you're—

"THE DEFENDANT: I want to be clear.

"THE COURT: Your counsel, Mr. Wagstaffe has been telling the court if we don't hear it today we're giving you the right to complain that you are put between a rock and a hard place in terms of your trial date, if you want to exercise your right to speedy trial. [Kenner was not the only person present that became confused.]

"THE DEFENDANT: I don't.

"THE COURT: Then when would you like to have your Faretta motion heard?

"THE DEFENDANT: [Defense Counsel] has to be present?

"THE COURT: Yes.

"THE DEFENDANT: I'd like to confer with him, see when his calendar—

"[DEFENSE COUNSEL]: Anytime after the—from the 29th on.

"THE COURT: Do it tomorrow or after the 29th.

"THE DEFENDANT: After the 29th.

"THE COURT: Sometime during the week of 29th."

On this record I see a basic breakdown in the orderly administration of justice. Stated otherwise, I see Kenner, still a defendant represented by an attorney, putting an ambiguous hypothetical question to the court in an effort to make *clear* his options, indeed if any he had, in the premises. I see Kenner's appointed counsel remaining silent and uninvolved save and except for making it known to the court whether the dates of continuance tentatively picked would or would not interfere with his planned vacation. I see Kenner seeking advice from the judge as to information that should have been accurately provided by his appointed attorney in privileged consultation. The questions asked of the judge by Kenner in my experience result in a court admonishing a defendant in Kenner's shoes to speak through his counsel. I see a judge in effect giving Kenner unsound advice that the judge would have had no occasion to give if Kenner's counsel had on Kenner's behalf advocated that *Faretta*, *Windham*, and *Joseph* at least contemplated, if not mandated, that because he was the judge presented with the *Faretta* motion, he must proceed to make the required *Faretta* inquiries, and the sooner the better if Kenner's freedom of choice was to be

scrupulously honored out of " 'respect for the individual which is the life-blood of the law.' " (*Faretta* v. *California, supra*, 422 U.S. at p. 834 [45 L.Ed.2d at 581].) I see a judge asking a defendant's uninformed preference as to a hearing date predicated upon the defendant's equally uninformed decision to waive his right to a speedy trial. In sum I see a record that exists and was made solely because Kenner was rendered ineffective assistance by his court-appointed private counsel. Until waived during the *Faretta* hearing, Kenner obviously was entitled to effective assistance of counsel performing with reasonable competence. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) Competent counsel furnishing Kenner adequate assistance on this record under consideration would have, in my view, readily argued, if not insisted, to continuing the *Faretta* hearing to 1:30 p.m. Assuming arguendo that Kenner would still have somehow attempted to clear out the confusion in his mind generated by the proceedings in the way that he did, competent counsel rendering effective assistance would have had stricken Kenner's questions. Competent counsel would then assure Kenner that he would explain the wisdom of his strategy to Kenner's satisfaction during the court's recess for lunch. Prejudice is manifest. After conferring with reasonably competent counsel and learning both the upside and downside of *Faretta* law, Kenner could reasonably expect that the trial judge would grant him the right to proceed pro se in accord with *Faretta*, *Windham*, and *Joseph*. In the colloquy during the *Marsden* hearing Kenner affirmatively exhibited that he was literate, intelligent, competent, and understanding and fully capable of voluntarily exercising his informed free will. (See *Faretta* v. *California, supra*, 422 U.S. at p. 835 [45 L.Ed.2d at pp. 581-582].) Without question, after conferring with reasonably competent counsel, zealously protecting his client's rights (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 631 [194 Cal.Rptr. 462, 668 P.2d 769]) within the bounds of the law, Kenner would have passed with flying colors, so to speak, a *Faretta* hearing, even one conducted fully in accord with Presiding Justice Gardner's (now retired) suggestions to trial judges "on how to protect the record when a defendant chooses to go it alone." (*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 571, 572-574 [138 Cal.Rptr. 36].)

Finally, every minute this judgment is allowed to stand, I see a record that "can only lead [Kenner] to believe that the law contrives against him." (*Faretta* v. *California, supra*, 422 U.S. at p. 834 [45 L.Ed.2d at p. 581].)

The court's majority, my highly regarded colleagues, rely heavily on *Brown* v. *Wainwright* (5th Cir. 1982) 665 F.2d 607 and *McKaskle* v. *Wiggins* (1984) 465 U.S. 168 [79 L.Ed.2d 122, 104 S.Ct. 944] in arriving at their decision holding that on the record of Kenner's appearances made on and subsequent to February 18, "he must be deemed to have abandoned or withdrawn that [*Faretta*] motion. [Fn. omitted.]" (See maj. opn., *ante*,

p. 62.) California cases subsequent to *Windham, supra,* cause me to believe that *Faretta* issues be decided on a case-by-case basis, and my belief is by no means limited to the issue of "timeliness." (*People* v. *Ruiz, supra,* 142 Cal.App.3d at p. 788.) As I read *Brown* v. *Wainwright, supra,* and *McKaskle* v. *Wiggins, supra,* both decisions are clearly distinguishable on the basis of their facts. Consequently, I conclude *McKaskle* is inapposite; the precedent emanates from a defense at trial conducted by a pro se defendant with appointed standby counsel, which clearly is not the situation at bench. As regards *Brown* v. *Wainwright,* the majority en banc, when finding waiver or abandonment of a *Faretta* request, accepted testimony from the defendant that he asked counsel to continue his representation, which is not the case at bench. Further, the majority in *Brown* v. *Wainwright* accepted evidence establishing that counsel and the defendant had worked out their differences. Frankly, I am persuaded by well-reasoned dissents filed in *Brown* v. *Wainwright.*

In closing, I am persuaded that the contribution to *Faretta law* that this court should make today is "A *Faretta* hearing offers a court ample opportunity to assure that a defendant understands and accepts the consequences of his decision, and to create a record to support its finding of a knowing waiver. As a result, once a defendant affirmatively states his desire to proceed *pro se,* a court should cease other business and make the required inquiry. It is through this hearing that the right to counsel is protected . . . . [¶] Delay in holding a hearing after the right is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust . . . . [¶] It therefore follows that sufficient protection of the *Faretta* right may only be achieved if the trial court is required to hold a hearing when the right is asserted. On review, a court need look only to the character of the assertion, and not beyond, to assure no error was committed. [Fn. omitted.]" (*Raulerson* v. *Wainwright, Secretary, Florida Department of Corrections* (1984) 469 U.S. 966, 970 [83 L.Ed.2d 302, 305, 105 S.Ct. 366] [dis. opn. of Marshall, J., on denial of cert.; reported below at 732 F.2d 803 (11th Cir. 1984)].)

Respectfully, the judgment must be reversed.

A petition for a rehearing was denied September 20, 1990. White, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied November 20, 1990. Broussard, J., was of the opinion that the petition should be granted.