Filed 3/9/26  P. v. Green CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TOYRION GREEN,<br><br>Defendant and Appellant. | B339949<br><br>(Los Angeles County Super. Ct. No. TA131223) |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed with directions.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.

The trial court recalled defendant and appellant Toyrion Green's (defendant's) sentence pursuant to Penal Code section 1172.75 (a statute that deems most previously imposed prior prison term enhancements invalid) and held a full resentencing hearing.[1] At that hearing, defendant asked to represent himself and the trial court never formally ruled on that request; instead, the court suggested defendant should proceed with counsel while also allowing defendant to personally argue the matter too. Following argument, the trial court ruled it would dismiss the one-year prior prison term enhancement that was part of defendant's prior criminal judgment but otherwise decline to further reduce defendant's sentence. We are principally asked to decide whether the trial court violated defendant's constitutional rights by not granting his request to represent himself.

## I.  BACKGROUND

### A.     *Defendant's Conviction, Sentence, and Direct Appeal*

In October 2014, the Los Angeles County District Attorney's Office filed an eight-count amended information against defendant charging him with attempted murder and other offenses. In addition to the eight substantive counts, the information alleged defendant had previously been convicted of a serious and/or violent felony (specifically, first degree burglary) and had sustained two prior convictions for which a prison term was served as described in section 667.5 (one of which was the first degree burglary conviction).

---

[1]     Undesignated statutory references that follow are to the Penal Code.

2

At trial, the jury convicted defendant on six of the eight counts: shooting at an occupied motor vehicle (count 2), criminal threats (count 3), and four counts of attempted murder (counts 4, 6, 7, and 8). The jury found true allegations that defendant personally used or discharged a firearm as to some of the counts.

At sentencing, defendant was sentenced to a total of 39 years in prison. Although the sentencing judge made no mention of the prior prison term enhancement when pronouncing sentence, the minute order issued in connection with sentencing and the abstract of judgment both indicated the enhancement had been imposed.[2]

On appeal from the conviction and sentence, this court affirmed defendant's convictions but modified the judgment to strike a four-year section 12022.5 firearm enhancement because it was an element of the underlying offense. (*People v. Green* (Nov. 29, 2016, B268500) [nonpub. opn.].) The appellate opinion directed the superior court to prepare an amended abstract of judgment to reflect the modification, but that document still listed the section 12022.5 enhancement—though the time imposed column on the abstract indicated it was "stayed."[3]

---

[2] The minute order and abstract of judgment still arrive at the same 39 years to life aggregate sentence, however. That is because both documents appear to treat a four-year sentence on one count as consecutive rather than concurrent (as ordered) and did not include a five-year prior serious felony conviction enhancement that the court had imposed.

[3] In 2022, defendant filed a petition for resentencing pursuant to section 1172.6. The trial court found defendant had not made a prima facie case of eligibility for resentencing and

*B.* *Defendant's Request for Resentencing That Is at Issue in This Appeal*

In March 2023, defendant used a habeas corpus form petition to file a challenge to his conviction and sentence. The document complained of "illegal sentence due to sentencing error" (specifically alleging the trial court "imposed an illegal enhancement"), discriminatory racial impact in sentencing, and a purported "illegal" conviction for attempted murder. Submitted with defendant's habeas corpus form petition was a "Motion for Modification of Sentencing" that complained that the trial court had unconstitutionally enhanced his sentence pursuant to sections 667.5 and 12022.53, subdivision (c).

The trial court construed defendant's submission as a request for resentencing pursuant to section 1172.75 and appointed counsel for defendant. Counsel filed a resentencing brief asking the court to strike the one-year prior prison term enhancement (§ 667.5, subd. (b)) he believed had been imposed and to hold a full resentencing at which the court should make other reductions in the determinate components of his sentence. The People filed an opposition to defendant's request for resentencing that argued reducing defendant's sentence would endanger public safety. The People maintained the court should "deny [defendant's] motion and impose the same sentence that the defendant received without any reduction, including any reduction for the [section] 667.5(b) prior previously imposed in this case."

---

denied the petition. Defendant appealed, and we affirmed. (*People v. Green* (May 19, 2025, B332653) [nonpub. opn.].)

4

After several continuances, the trial court held a hearing on defendant's request for resentencing in July 2024. At the outset, defendant asked to personally address the court, and when the court informed him that he should speak to his lawyer, the lawyer informed the court that defendant wanted to speak about representing himself.

Defendant thereafter told the court he had motions he had been trying to file and complained that his attorney did not discuss his corrections file with him despite promising to do so. He also mentioned his family had been sending his attorney emails. The court asked defendant if he had attended law school. He said no and explained he had been doing his own research. Defendant also said he had been contacting his attorney "for the last year or two, and my family had e-mailed and everything," and again referenced items in his corrections file. The court said it would proceed with the hearing and, when it was time to hear from defendant's lawyer, the court would see if defendant still wanted to represent himself. The court explained: "And I say this because I don't want you to make a mistake. Okay? And— but I want us to just start and, I promise, before I hear from [defense counsel], I'll turn back to you and I'll ask you if you still want to represent yourself." Defendant agreed this was acceptable while at the same time maintaining he had a conflict of interest with his lawyer and reiterating that both he and his family had been contacting counsel.

Proceeding with the hearing, the court stated it had read and considered the briefs submitted by defense counsel, as well as letters of support for defendant, and the People's opposition. The court said that based on its review of the file, it appeared the original sentencing court imposed an enhancement pursuant to

5

section 667.5, making defendant eligible for resentencing. (As we later explain, this was incorrect.)

The court ruled it would recall defendant's sentence pursuant to section 1172.75 and strike the section 667.5, subdivision (b) enhancement. The court then held a full resentencing and considered further argument.

The court stated it was permitted to consider postconviction factors, and asked defendant's attorney if he had reviewed defendant's disciplinary records and record of rehabilitation. Counsel responded in the affirmative, and the People also stated they had reviewed the file. The People opined defendant did not have a good disciplinary record, explaining defendant had a number of write-ups, including ten within the preceding five years. Among them were write-ups for fighting, battery on an inmate, battery on a peace officer, and possession of a controlled substance. The People also asserted defendant only completed one course that was offered to him and had not tried to get a G.E.D.

The court asked defense counsel why he believed defendant was entitled to relief based on the deficits in his postconviction record. Counsel stated he had spoken to defendant and defendant's family and believed the instances of violence in prison were instances when defendant had to protect himself. Counsel also asserted defendant had a significant amount of support, including from people who were in the courtroom observing the hearing. Counsel then paused to look for something and the following exchange occurred:

"Defendant: Excuse me, your honor.

"The Court: Hold on. I promise I'll give you as much time as you wish to address the court. Okay?

"While he's checking his thing, it can't hurt to have you advocate for yourself and have [counsel] advocate for you too. Right?

"Defendant:  That's the thing.

"The Court:  Hold on.  Hold on."

Continuing, defense counsel argued the court had discretion to strike the 20-year firearm enhancement defendant received and urged the court to do that and to run defendant's determinate term concurrently with his life sentence.  Counsel argued defendant's support system was evidence of rehabilitation because rehabilitation is, in part, what type of support someone has when they are getting ready to be released from prison.

The trial court then asked defense counsel if it was okay if the court heard from defendant personally.  Defense counsel agreed.  The court addressed defendant directly and explained a request under section 1172.75 was normally brought when someone has a record of rehabilitating him or herself.  The court also said the record of defendant's time in prison, compared to other petitions the court had seen, was "the most horrible petition [it has] seen in terms of how you've done in prison . . . ." The court then said, "So let me hear from you.  And this is the time—this is what I want you to focus on: don't focus on what [counsel] didn't do but, rather . . . . [¶] I want you to focus on what else you want me to consider instead of why [counsel] didn't do this or should have done that.  Tell me why, in spite of how you've done in prison, you should be given this relief."

Defendant told the court about classes he completed in prison, explained he completed his G.E.D. when he was a juvenile, and provided context and explanations for many of the

incidents for which he was written up in prison. He also asserted his family had paperwork to support his assertions.

After defendant finished, the court asked if there was anything else defendant wanted the court to consider to convince it he had rehabilitated himself while incarcerated. Defendant said, "That's what I'm askin' you. Can you give me a little more time so that way I can be able to get all the things that I'm tellin' you that I have to present it, instead of just bein' my word." The court interjected, saying it believed defendant was trustworthy, and was accepting his word regarding the classes he attended and the completion of his G.E.D. Defendant told the court he had changed and explained how his mindset had shifted. (In doing so, however, he asserted he was "sentenced to life for a crime that [he] did not commit.")

After further argument from the People and further statements from defendant, the court asked if there was anything else. Defendant said no, defense counsel also said no, and the People submitted. The court resentenced defendant to the same sentence initially imposed—minus the section 667.5, subdivision (b) prior prison term enhancement that the court believed was originally part of defendant's sentence.[4] Defendant's abstract of judgment was amended, and the enhancement pursuant to section 667.5 was removed.

---

[4]     Following the court's ruling, defendant asked if he could file some motions. The court said they were done, and any motions would have to be submitted from prison.

## II.  DISCUSSION

There are two considerations that may preclude reaching the sole disputed issue defendant raises in this appeal: whether he should have been permitted to represent himself at the resentencing hearing.  There is the initial legal question of whether a defendant has a *Faretta v. California* (1975) 422 U.S. 806 right to represent himself when his right to counsel principally finds its source in a statute (section 1172.75) and our Supreme Court has not decided whether the right also derives from constitutional guarantees.  There is also the initial factual question (never raised below) of whether defendant was eligible for section 1172.75 relief at all when the original oral pronouncement of sentence did not include a section 667.5, subdivision (b) prior prison term enhancement.  For the sake of argument, we shall assume these questions away and proceed on the understanding that defendant did have a *Faretta* right to represent himself and was eligible for a section 1172.75 resentencing.  Even with these assumptions, defendant is not entitled to reversal because he effectively abandoned his request for self-representation by acquiescing in the trial court's procedure that allowed defendant's attorney and defendant personally to argue the matter at resentencing (they did not take inconsistent positions).  We will, however, order clerical corrections to the abstract of judgment and the sentencing minute order that we shall describe.

### A.     *The Self-Representation Request Was Abandoned*

Cases generally hold a self-representation request should be granted "if three conditions are met.  First, the defendant must be mentally competent, and must make his request

9

knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729; accord, *People v. Thomas* (2023) 14 Cal.5th 327, 397.) "[T]he *Faretta* right, once asserted, may be waived or abandoned[, however]." (*People v. Dunkle* (2005) 36 Cal.4th 861, 909, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see also *People v. Stanley* (2006) 39 Cal.4th 913, 929 [*Faretta* motion abandoned where defendant subsequently accepted appointed counsel's representation].) Here, the problem is that defendant effectively abandoned his request to represent himself even if the request is considered to have been timely and unequivocally made.

Defendant initially made the request to represent himself at the beginning of the section 1172.75 hearing and then appeared poised to reiterate it thereafter when asking for the court's attention. At that juncture, the court said, "It can't hurt to have you advocate for yourself and have [counsel] advocate for you too. Right?" Defendant began to respond, saying, "That's the thing," and the court told him to hold on. Defense counsel then made additional argument, and after that, the court turned to defendant personally and asked him to "focus on what else you want me to consider instead of why [counsel] didn't do this or should have done that. Tell me why, in spite of how you've done in prison, you should be given this relief." Defendant could have then reiterated his desire to represent himself, but he did not and instead followed the trial court's suggestion to address his record in prison (albeit while complaining counsel would have known

10

the facts defendant mentioned in court if counsel had contacted defendant previously). After that, when the court asked if he had "anything else" he wanted to say, defendant responded "no" and did not ask for a formal ruling on his self-representation request. Because defendant had time to consider the trial court's earlier suggestion that he and his attorney *both* argue the matter, because defendant heard his attorney's argument before he personally argued the matter, and because the positions taken by defendant and his attorney did not conflict, we understand defendant to have had second thoughts about the wisdom or necessity of representing himself (to the exclusion of appointed counsel) and abandoned the idea. (*People v. Kenner* (1990) 223 Cal.App.3d 56, 62; see also *People v. Skaggs* (1996) 44 Cal.App.4th 1, 7-8 [defendant abandoned self-representation request by failing to press the court to rule on it].)

Defendant, however, contends he did not abandon his self-representation request because the court did not again specifically ask him if he wanted to represent himself (as the court earlier said it would). He argues that in the absence of another prompt from the court, it was reasonable for him to simply respond to the court's later request that he tell the court why he should be given relief.[5] Defendant is correct that there were no further specific prompts from the court, but he was given a quite open-ended opportunity to say anything he wished before the court rule—and defendant said nothing. That opportunity

---

[5]     We do not discuss whether defendant should have to make, or could make, a showing of prejudice under the circumstances because, as we have already said, we assume arguendo that *Faretta* principles apply in this appeal.

was enough, for "[d]efendants who sincerely seek to represent themselves have a responsibility to speak up." (*Kenner*, *supra*, 223 Cal.App.3d at 62.) And "it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion." (*Ibid.* [deeming *Faretta* motion abandoned or withdrawn where the defendant had time and opportunity to follow up on request for a hearing on a *Faretta* motion but failed to do so].)

### B.     Errors in the Abstract of Judgment and Sentencing Minute Order

There are two clerical errors in the abstract of judgment, and one in the original sentencing minute order, that we shall order corrected. First, the sentencing judge did include "a five-year prior" in its oral pronouncement of defendant's sentence. Based on the operative information, this was an enhancement pursuant to section 667, subdivision (a). No five-year enhancement was recorded on either the minute order or the abstract of judgment, however, and this clerical order is subject to correction. (See, e.g., *People v. Boyd* (2024) 103 Cal.App.5th 56, 63; *People v. Jones* (2012) 54 Cal.4th 1, 89; *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Second, in this court's opinion affirming defendant's conviction on direct appeal, we struck the enhancement imposed pursuant to section 12022.5. (*People v. Green* (Nov. 2, 2016, B268500) [nonpub. opn.].) We did not stay it, as the abstract of judgment currently reflects. The abstract of judgment should be amended to accurately reflect the enhancement was stricken, not merely stayed.

12

## DISPOSITION

The trial court's July 19, 2024, order is affirmed. The superior court is directed to prepare an amended abstract of judgment that correctly reflects the imposition of an enhancement pursuant to section 667, subdivision (a) and does not reflect imposition of the section 12022.5 enhancement that this court ordered stricken. (The abstract of judgment also should not include imposition of an enhancement pursuant to section 667.5, subdivision (b).) A copy of the corrected abstract of judgment should be transmitted to the Department of Corrections and Rehabilitation. The trial court is also directed to correct the November 24, 2015, sentencing minute order to reflect the trial court imposed a five-year enhancement pursuant to section 667, subdivision (a).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

HOFFSTADT, P. J.

KIM (D.), J.

13