[No. A067355. First Dist., Div. Two. Mar. 28, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY JOE SKAGGS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

_____

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. A., III. B. and III. C.

**COUNSEL**

Geri Lynn Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Atttorney General, and Catherine A. Rivlin, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Billy Joe Skaggs (Skaggs) was convicted by a jury of inflicting pain or mental suffering on an elder (Pen. Code, § 368, subd. (a)), assault with force

likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) and intimidating a witness or victim (Pen. Code, § 136.1, subd. (c)(1)). The trial court also found true an on-bail enhancement and the existence of two prior prison convictions. Skaggs was sentenced to a total of five years in prison.[1]

On appeal, Skaggs challenges the sufficiency of the evidence to support his convictions, alleges instructional error and claims he was denied his constitutional right to represent himself. We affirm the judgment.

## II. STATEMENT OF FACTS

Viewing the evidence in the light most favorable to the prosecution, the record discloses the following incident which gave rise to Skaggs's convictions. On the evening of May 27, 1994, Skaggs arrived at the home of his 76-year-old mother, Bessie Clevenger, in time for dinner. He had been drinking, and brought with him a large bottle of Schnapps. After dinner, Skaggs made a phone call. When Ms. Clevenger told him to get off the phone, Skaggs became enraged.

Skaggs pulled the phone out of the wall, turned over furniture and broke virtually everything in his mother's living room. Skaggs also threatened to hurt his mother. He searched the kitchen for a knife and, when he was unable to find one, pulled the kitchen drawer "off." He cornered Ms. Clevenger on the living room couch, and towered over her, standing atop the coffee table, and raised the liquor bottle over her head in a striking motion. Several times Skaggs threatened to hit his mother with the Schnapps bottle. Skaggs forced Ms. Clevenger to remain on the couch. When she asked to go to the bathroom, he refused, stating: "You're not going. . . . Just like they do in prison. Just have to lay and wet [the] bed." Ms. Clevenger asked to go to the bathroom a few times and tried to get up off the couch but was afraid Skaggs would hit her with the Schnapps bottle.

At some point during his tirade, Skaggs put his hands around his mother's throat. Mrs. Clevenger testified that when Skaggs's hands were around her throat it was "somewhat" difficult to breath and that "it hurt a little while after" he stopped. Eventually, Skaggs fell asleep in a chair with an empty Schnapps bottle between his legs. Ms. Clevenger ran to a neighbor's house to call the police. The neighbor testified at trial that Ms. Clevenger was shaking fiercely and was almost "shocky" and that Ms. Clevenger told her Skaggs tried to kill her.

---

[1] In a separate proceeding, Skaggs pled guilty to being a felon in possession of a firearm (the charge for which he had been free on bail when the present offenses were committed) in exchange for a concurrent sentence.

There is evidence in the record that Skaggs has a drinking problem and that he has threatened to kill his mother in the past. There is also evidence that Ms. Clevenger is in very poor health. Skaggs himself testified that his mother is sick and that she has high blood pressure. He admitted that excitement and stress are very dangerous for her and could cause her to suffer a heart attack (her blood pressure needs to be checked several times a day). Skaggs also admitted that his behavior on the night of the incident caused his mother a great deal of stress.

While Skaggs was in custody awaiting arraignment, he sent several letters to his mother, some of which contained threatening language. For example, one letter began: "I don't know what we are going to do. We sure aint getting any better, but I don't know what to do. If I leave you every-one and his brother is going to mess over you and take advantage of you. I just don't know what to do because it is getting awful close to me hurting you." Another letter began with the following sentiment: "I don't know if you are wanting to die or what in the heck is wrong with you. [¶] I am not doing any thing to you, but you forget I have friends that don't like snitches theres not much I can do about that, so if you want to push your luck, go ahead." Another part of this letter warned: "If you tell one lie on that stand I am going to push a perjury charge you had better read up on your laws what that means." One of the letters Skaggs wrote to his mother was sent in an envelope upon which was drawn a smoking gun with bullet holes surrounding it.

Skaggs testified that the letters he sent his mother from prison were not meant to threaten or frighten her, but were only expressions of concern for her safety. Further, Skaggs maintained that he did not draw the gun on the outside of the envelope; he found the envelope with the gun drawing on it and used it to send the letter to his mother, believing she would think nothing of it.

III. Discussion

A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . .

D. *The Faretta Motion*

 Skaggs contends his constitutional rights were violated when the lower court "summarily denied" his request to represent himself. The People

*See footnote, *ante,* page 1.

counter that Skaggs did not clearly and unequivocally assert his right to self-representation. For reasons that follow, we conclude that Skaggs failed to make an unequivocal request to represent himself. Further, even if we were to characterize Skaggs's comment as a proper request, it was never ruled upon by the court and was ultimately abandoned.

In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (hereafter *Faretta*), the United States Supreme Court held that a defendant in a state criminal trial has a federal constitutional right to self-representation. " '[I]n order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an *unequivocal* assertion of that right within a reasonable time prior to the commencement of trial.' [Citations.]" (*People* v. *Wright* (1990) 52 Cal.3d 367, 409 [276 Cal.Rptr. 731, 802 P.2d 221].) Failure to grant a proper *Faretta* request is reversible error. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 946-948 [196 Cal.Rptr. 339, 671 P.2d 843].)

At his arraignment, Skaggs personally alerted the court that he would "like to make a Motion for Substitution of Counsel." The court asked Skaggs if he was making a *Marsden*[8] motion and Skaggs confirmed that he was. The motion was heard that afternoon. Skaggs complained that his counsel was not complying with his requests and did not have time for his case. Counsel responded to Skaggs's complaint, describing the work she had done on the case and discussing some of her interactions with Skaggs and with Skaggs's mother. Skaggs took issue with counsel's contention that Skaggs's mother was terrified of him, arguing she was just senile. He also complained that counsel failed to investigate his case or locate any witnesses, stating: "There's been no investigation in this damn thing at all. No witnesses that I wanted to come to preliminary hearing. Where are the witnesses? Where are the witnesses that are supposed to come, were they there at the preliminary hearing? I can't handle this, this is my life we're messin' with here. I don't—I'd like to go pro per if I could." After further discussion regarding defense counsel's investigative efforts, the court denied Skaggs's *Marsden* motion, concluding that defense counsel was adequately responding to Skaggs's requests and handling the case professionally and that Skaggs's right to assistance of counsel was not impaired.

We disagree with Skaggs that his single statement that "I don't . . . I'd like to go pro per if I could" was sufficiently unequivocal to constitute a *Faretta* motion. The statement was made during a hearing on a motion to

---

[8]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] requires that the court permit a criminal defendant to state the reasons why he or she believes court-appointed counsel should be discharged.

*substitute* counsel and was part of Skaggs's explanation of the problems he was having with his appointed counsel. The comment was obviously aimed at impressing upon the court just how dissatisfied Skaggs was with his present counsel. Further, the record clearly illustrates the court did not interpret Skaggs's comments as a *Faretta* motion. The court repeatedly and consistently referred to the matter before him as a *Marsden* matter and nobody at the hearing disagreed with this characterization of the issue or made any statements inconsistent with it.[9] If Skaggs intended to couple his express request for "substitute counsel" with an alternative request to represent himself, he did not communicate that intent to the court at the arraignment or at any other time.

Skaggs's reliance on *People* v. *Joseph, supra,* 34 Cal.3d 936 (hereafter *Joseph*), is misplaced. In that capital case, our Supreme Court held the lower court erred by denying defendant's *Faretta* motion. Among other things, the People argued that the defendant's request was not unequivocal because it was "tagged along" with and really just a part of the motion to relieve counsel. (*Id.* at p. 944, fn. 3.) The *Joseph* court rejected this argument as inconsistent with the record, which clearly established that the defendant proffered two separate and distinct motions. (*Ibid.*) Indeed, the lower court in *Joseph* expressly stated on the record that there were two motions and separately ruled on each, first granting the motion to relieve counsel and then later denying the *Faretta* motion. (*Id.* at pp. 941-942.)[10]

Skaggs's contention that *Joseph* establishes that ". . . the mere fact that the two motions are made in the same proceeding does not compel the conclusion that the pro se motion and its attendant waivers are unintelligent and unknowing" (*Joseph, supra,* 34 Cal.3d at p. 944, fn. 3, italics omitted) is accurate but not helpful. The issue is not whether Skaggs could have made a

---

[9]After the court concluded that defense counsel was adequately representing Skaggs, the following colloquy ensued:

"THE COURT: . . . I'll deny the Marsden Motion and confirm dates I've given you. And I know Ms. Mockler will be coming in to see you and talk to you in preparation for the hearing.

"THE DEFENDANT: Your Honor, I think I'll have a contempt charge every time I appear.

"THE COURT: My hope is you'll be appropriate and listen to what she says.

"THE DEFENDANT: I can't do it no more.

"THE COURT: I encourage you and urge you to be responsive to her representation and to work with her.

"THE DEFENDANT: I can't do it.

"THE COURT: Well, I find, sir, there's no reason that you can't.

"THE DEFENDANT: Well . . .

"THE COURT: Marsden Motion matter is concluded."

[10]In *Joseph*, the defendant, defense counsel and the court all stated on the record that the defendant wished to represent himself. (*Joseph, supra,* 34 Cal.3d at pp. 939-942.) Indeed, the court and the defendant engaged in a lengthy discussion about whether the defendant was qualified to represent himself. (*Ibid.*)

*Faretta* motion at his *Marsden* hearing but whether he in fact made such a motion. We find that he did not because, in contrast to the *Joseph* defendant, Skaggs failed to unequivocally assert his right to self-representation.

This case is more analogous to *People* v. *Wright, supra,* 52 Cal.3d 367 (hereafter *Wright*). In that case, defendant complained during a trial setting conference that he was not getting along with his counsel, stating: " 'And I feel like this—like me and he can't get along. If I got to go down, let me go down by myself because I really don't need no overworked PD trying to help me fight my case when he not [*sic*] going to do nothing for me.' " (*Id.* at p. 408.) The *Wright* court held that this "tangential" reference to defendant's desire to proceed without an attorney was not an unequivocal assertion of the right of self representation. (*Id.* at pp. 408, 409.)

Skaggs contends he was not required to "vociferously" assert his *Faretta* right because the court's summary denial of his motion made further argument futile. The authority upon which Skaggs relies involved cases in which defendants first unequivocally asserted their *Faretta* rights, and were then not required to re-assert those rights after their requests were denied. (See *People* v. *Poplawski* (1994) 25 Cal.App.4th 881, 885-886 [30 Cal.Rptr.2d 760]; *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1072 [233 Cal.Rptr. 632].)[11] Skaggs provides no authority which indicates that a *Faretta* request can be anything short of unequivocal.

In contrast to cases upon which Skaggs relies, the record in the present case confirms that, if Skaggs intended to assert his *Faretta* right, he did not unequivocally communicate that intention to the court. Under these circumstances, the trial court has no *sua sponte* duty to inquire about defendant's intent when his purpose is not immediately clear. (*People* v. *Webster* (1991) 54 Cal.3d 411, 436 [285 Cal.Rptr. 31, 814 P.2d 1273] [defendant's request to "fire" appointed counsel not an unequivocal assertion of right to proceed in propria persona].)

Further, even if we characterize Skaggs's comment as a *Faretta* motion, we cannot accept his contention that the trial court summarily denied his request. Nothing in the record even suggests the lower court perceived Skaggs's statement as a *Faretta* motion. Rather, the court entertained and denied a *Marsden* motion. If a *Faretta* motion was made, it was not ruled upon. By failing to request such a ruling and never raising the issue again,

---

[11]In *People* v. *Poplawski*, defendant's *Faretta* motion was actually granted but later revoked by the court. (*People* v. *Poplawski, supra,* 25 Cal.App.4th at pp. 885-889.) And, the appellant in *In re Justin L.* filed a document entitled " 'Discharge of Attorney and Substitution of Party In Propria Persona.' " (*In re Justin L., supra,* 188 Cal.App.3d at p. 1072.)

Skaggs abandoned the motion he now claims he made. (*People* v. *Kenner* (1990) 223 Cal.App.3d 56 [272 Cal.Rptr. 551] (hereafter *Kenner*).)

In *Kenner*, defendant appealed his drug conviction, arguing the trial court's failure to rule on his *Faretta* motion constituted reversible error. It was undisputed that defendant made a timely and unequivocal *Faretta* motion after his motion for new counsel was denied. (*Kenner*, *supra*, 223 Cal.App.3d at p. 58.) The trial court set the matter for hearing, but the hearing was continued several times as a result of defendant's custody status. When defendant finally appeared at a hearing, his counsel indicated to the court that the pending motion could be reserved until the next pretrial hearing. Defendant made no mention of his *Faretta* motion then or at any of the subsequent hearings which he attended. "The matter was never mentioned again until his opening brief was filed" in the appellate court. (*Id.* at p. 59.) Division Three of this court held that a criminal defendant who makes a timely *Faretta* motion can, by his postmotion conduct, abandon his request for a *Faretta* hearing.[12] (*Ibid.*)

*Kenner* identifies two practical justifications for permitting waiver by conduct in this context. First, it discourages gamesmanship by preventing a defendant who realizes that his *Faretta* request has not been addressed from saving his "*Faretta* ace to play triumphantly on appeal." (*Kenner*, *supra*, 223 Cal.App.3d at p. 62.) Second, it recognizes that "[d]efendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, . . . it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion." (*Ibid.*)

Although neither party has cited *Kenner* to us, it clearly supports our holding on this issue. Skaggs made a single ambiguous comment about his desire to represent himself. Even if we were to interpret that comment, made in the context of a *Marsden* motion, as an unequivocal request (which we do not), it is clear from the record that the request was never ruled upon. Skaggs's failure to request such a ruling or to raise the issue again and his silent acceptance of defense counsel's assistance for the remainder of the proceedings in the trial court constitute a waiver or abandonment of any right to self-representation Skaggs arguably asserted.

---

[12]Finding no applicable California authority, the *Kenner* court relied on federal precedent establishing that, unlike the right to counsel, the right to self-representation can be waived or abandoned by conduct. (*Kenner*, *supra*, 223 Cal.App.3d at pp. 60-62, citing *Brown* v. *Wainwright* (5th Cir. 1982) 665 F.2d 607 and *McKaskle* v. *Wiggins* (1984) 465 U.S. 168 [79 L.Ed.2d 122, 104 S.Ct. 944].)

## IV. DISPOSITION

The judgment below is affirmed.

Kline, P. J., and Phelan, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 1996.