Filed 10/7/14  P. v. Pinski CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049348 |
| v. | (Super. Ct. No. 13NF2432) |
| HENRY JOHN PINSKI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes and Greg L. Prickett, Judges.  Affirmed.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Henry John Pinski of second degree robbery. (Pen. Code, §§ 211, 212.5, subd. (c).)  He was sentenced to a prison term of three years, and ordered to pay restitution, fines, and fees.  He filed a timely notice of appeal.

We appointed counsel to represent defendant.  Counsel filed a brief which set forth the facts and the disposition of the case.  She did not argue against defendant, but advised she had not found any issues to argue on defendant's behalf.  (*People v. Wende* (1979) 25 Cal.3d 436; *Anders v. California* (1967) 386 U.S. 738.)  To assist us in our independent review of the record, she suggested we consider whether the court erred by denying defendant's request to represent himself, and whether his robbery conviction is supported by substantial evidence.

Defendant then filed a supplemental brief which discusses the two issues suggested by counsel, argues the court erred by denying his request for a different court appointed lawyer, and asserts his trial counsel was ineffective.  Because these specific issues were raised by defendant himself, we will address them in our opinion and explain why they fail.  (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

We have examined the entire record to determine if any arguable issues are present and have found none.  (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Johnson* (1981) 123 Cal.App.3d 106, 111-112.)

**FACTS**

*A.  Prosecution Evidence.*

About 6:00 p.m., on July 15, 2013, Regaul Karim was working at a 7-Eleven in Anaheim, when he saw defendant take a burrito and a sandwich and place them under his black jacket.  Karim believed defendant was stealing these items.

Karim followed defendant and also saw him take a cake from another aisle and place it under his clothing.  Karim confronted defendant, stuck out his hand and said, "Whatever you take, just give it to me."  Defendant then struck Karim in the face, dropped the cake and ran out of the store.

2

A 60-second surveillance video captured the confrontation between Karim and defendant, and what happened after the confrontation, but not what happened before the confrontation.

A few minutes later, Officer Staci Dietz spotted defendant at an intersection about two miles away from the 7-Eleven. Dietz pulled her patrol car up directly in front of defendant, got out of her car and pointed her weapon at him.

Defendant dropped a bag he was carrying and ran across the street. Dietz gave chase. Defendant ran through a church parking lot, hopped two fences and into an apartment complex. Dietz then stopped for safety and called for backup.

A short time later, Officer German Alvarez found and arrested defendant. Meanwhile, Dietz returned to where she had first noticed defendant and recovered the bag he had dropped. Inside the bag she found some papers and a black sweatshirt, but none of the items Karim believed defendant had stolen.

B. *Defense Evidence.*

Defendant testified he entered the 7-Eleven, picked up a burrito and a sandwich from the deli section, placed them under his shirt in his armpit, walked over to the next aisle and grabbed a cake. Defendant believed since his shirt was under his armpit, it may have appeared that he was attempting to conceal the burrito and the sandwich.

Suddenly, Karim put his hands out and said loudly and aggressively in front of others, "What are you taking? Give it to me." There were no customers in that aisle, but the store was filled with people. Defendant felt Karim was trying to embarrass him. So, he dropped the cake and punched Karim.

Realizing he had committed an assault, defendant felt embarrassed and ran out of the store. Before exiting, defendant recalled he was still holding the other two items and dropped those as well. Defendant acknowledged he should not have reacted as he did and expressed regret, but explained that he was angry at the time.

3

Defendant denied he intended to steal anything and insisted he was going to pay for the items. He said he had cash in his pocket that he had withdrawn from his books at the Orange County jail. An Orange County Sheriff's Department jail accounting officer confirmed defendant had withdrawn $8.20 that morning.

Immediately following the incident, defendant headed toward a gas station, where he purchased a Hot Pocket, a burrito and a cake. When Dietz pointed her gun at him, he was afraid, so he dropped the bag and ran. Defendant believed he was being pursued because of the assault, and had no idea he had been accused of theft or robbery.

Following his arrest, defendant told Alvarez he was never at the 7-Eleven. At trial defendant explained he lied to Alvarez because of the assault against Karim, not because he had committed a theft or robbery. Defendant insisted he was not lying at trial and wanted to tell his side of the story. Defendant's credibility was challenged with prior burglary, vandalism and assault convictions.

## DISCUSSION

*1. The Court Did Not Err by Denying Defendant's Request for A Different Lawyer.*

Defendant was represented by appointed counsel at trial. Defendant claims the trial court erred in denying his request for another lawyer, because his court appointed lawyer was providing inadequate representation.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation— i.e., makes what is commonly called a *Marsden* motion [citation]—the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion." (*People v. Smith* (2003) 30 Cal.4th 581, 604; *People v. Taylor* (2010) 48 Cal.4th 574, 599.)

4

Defendant requested a *Marsden* hearing twice. He made the first request to Judge Gregg L. Prickett on August 30, 2013, but when the matter was sent to Judge Richard M. King for hearing on September 3, 2013, defendant changed his mind and told Judge King he was "not asking to discharge counsel."

Defendant made his second request on September 30, 2013, again to Judge Prickett. On that date the matter was sent to Judge W. Michael Hayes for hearing. Judge Hayes heard and ultimately denied the *Marsden* motion.

We have reviewed the sealed transcript of the *Marsden* hearing. Judge Hayes permitted defendant to explain the basis of his contentions, and to relate specific instances of alleged inadequate performance. Judge Hayes then questioned defense counsel about those contentions and specific instances.

The record does not support defendant's contention that his appointed counsel was not providing adequate representation. Furthermore, defendant did not show that failure to replace his appointed counsel would substantially impair his right to assistance of counsel. Therefore, we find no abuse of discretion by Judge Hayes.

2. *The Court Did Not Err by Denying Defendant's Request to Represent Himself.*

Defendant next claims the trial court erred in denying his request for self-representation. (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).) Immediately after Judge Hayes denied the *Marsden* motion, defendant told Judge Prickett he wanted to represent himself. Judge Prickett advised defendant not to make that request "out of frustration," and defendant decided not to pursue it.

The next day, defendant again told Judge Prickett he wanted to represent himself. Judge Prickett asked how much time defendant would need to prepare for trial, and he said two weeks. Judge Prickett then found the request untimely and denied it. At that point defendant complained his attorney was not fit to represent him, and said he did not understand how he could be forced to be represented by an attorney he did not find "fit." He asked whether the court was denying his request to represent himself.

5

Judge Prickett said: "I'm denying your request as being untimely. And I'm also noting that there is case law that speaks of the fact that in light of – it is on the heels of these other things, it is not an unequivocal assertion. [¶] But the court is mostly relying on the fact that the matter is here for trial. It has been trailing. You have now asserted that right after other rights – other requests of yours were denied."

"[I]n order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial." (*People v. Windham* (1977) 19 Cal.3d 121, 127-128.) Requests made on the heels of denial of a *Marsden* motion have been deemed equivocal. (See *People v. Valdez* (2004) 32 Cal.4th 73; *People v. Tena* (2007) 156 Cal.App.4th 598; *People v. Scott* (2001) 91 Cal.App.4th 1197; *People v. Skaggs* (1996) 44 Cal.App.4th 1.)

Applying these principles we conclude Judge Prickett did not err by denying defendant's untimely and equivocal *Faretta* request. Defendant's *Faretta* request while the case was trailing and just prior to the start of trial was not timely. (See *People v. Hill* (1983) 148 Cal.App.3d 744, 757 [request made five days before trial was untimely and within trial court's discretion to deny]; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 791 [request made six days before trial was untimely].)

More importantly, defendant's *Faretta* request was not unequivocal. Defendant made the *Faretta* request immediately after Judge Hayes denied the *Marsden* motion, and defendant's subsequent comments to Judge Prickett suggest defendant made the *Faretta* motion only because he wanted to rid himself of appointed counsel. Under these circumstances, we find no abuse of discretion by Judge Prickett.

### 3. *Defendant's Robbery Conviction Is Supported by Substantial Evidence.*

Defendant also claims the evidence is insufficient to support his robbery conviction. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is

reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Substantial evidence is that which is "reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Inferences may not be based on suspicion or speculation alone without supporting evidence. (*People v. Raley* (1992) 2 Cal.4th 870, 891.) The trier of fact has the exclusive task of weighing the credibility of the witnesses and determining the truth or falsity of the facts presented. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.)

Robbery is the taking of personal property from his person or immediate presence, and against his will, accomplished by means of force or fear. (Pen. Code, § 211.) The taking element is comprised of "gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) The asportation requirement is satisfied by "evidence of slight movement." (*Ibid.*; *People v. Pham* (1993) 15 Cal.App.4th 61, 65; see also *People v. Estes* (1983) 147 Cal.App.3d 23, 27-28.) The perpetrator must form the "intent to steal . . . either before or during the commission of the act of force." (*People v. Marshall* (1997) 15 Cal.4th 1, 34.)

Viewing the evidence in the light most favorable to the verdict, as we are required to do (*People v. Young* (2005) 34 Cal.4th 1149, 1180), we conclude there was plenty of evidence here that was reasonable, credible, and of solid value to support the robbery conviction beyond a reasonable doubt. (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578.) Defendant's own testimony at trial established all of the elements of the robbery, except the intent to steal. On this point, the jury was free to disregard defendant's self-serving testimony and, based upon the totality of the circumstances, conclude defendant had formed an intent to steal before or during his admitted confrontation with Karim.

7

*4. Defendant's Trial Counsel Was Not Ineffective.*

Finally, defendant asserts his trial counsel was ineffective. "Because after a conviction it is all too easy to criticize defense counsel and claim ineffective assistance, a court must eliminate the distorting effects of hindsight by indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citations.]' [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 158.)

"To demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was unreasonable when measured by prevailing professional norms and that there is a reasonable probability that but for counsel's unreasonable acts or omissions, the result of the proceeding would have been more favorable. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.] If the record does not disclose why counsel acted or failed to act in the manner challenged, then, unless counsel was asked for and failed to provide an explanation or there could be no satisfactory explanation, we reject the claim on appeal and affirm the judgment." (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 194.)

In this case, defendant challenges a number of trial counsel's actions or inactions, and most of these challenges appear distorted by hindsight. Generally, defendant cites his own lack of confidence in counsel, and alleges counsel failed to communicate and was unprepared. More specifically, he complains counsel failed to file a motion to dismiss, initially considered an unmeritorious ID defense, and neglected to timely investigate the claim defendant shopped at a gas station after leaving the 7-Eleven, and the claim he had cash in his pocket and thus no need to steal. Finally, defendant finds fault with counsel's decision not to exercise peremptory challenges as to certain jurors, and failure to object to the 60-second edited version of the surveillance video.

8

Some of these complaints were explored in the *Marsden* hearing and counsel provided a satisfactory explanation. As to the rest, the record itself discloses why counsel acted or failed to act in the manner challenged. Hence, defendant has not overcome the strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and the challenged actions might be considered sound trial strategy. Furthermore, even if we assume counsel's performance was deficient, defendant has utterly failed to demonstrate there is a reasonable probability that but for counsel's allegedly unreasonable acts or omissions, the result would have been more favorable. Thus, we reject defendant's ineffective assistance of counsel claim.

However, we do so with one caveat. In cases such as this, where there could be matters outside the record to be considered in evaluating the ineffective assistance of counsel claim, a habeas corpus petition should be filed with an appeal. (*In re Clark* (1993) 5 Cal.4th 750, 785, fn. 22.) Defendant did not file a habeas corpus petition and, while we undoubtedly have discretion to construe defendant's supplemental brief itself as a petition for habeas corpus, we decline to do so because (a) to the extent defendant's ineffective assistance claims could concern matters outside the record, further evidentiary proceedings would likely be required, (b) defendant has not first applied for habeas relief in the superior court, and (c) defendant has not explained why he has not done so. (*In re Ramirez* (2001) 89 Cal.App.4th 1312; *In re Hillery* (1962) 202 Cal.App.2d 293.) Therefore, our decision on his ineffective assistance claim is made without prejudice to any subsequent petition for habeas corpus filed in the superior court.

**DISPOSITION**

Counsel is right—there are no issues on appeal.  The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.