Filed 10/13/15  P. v. Fleming CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL FLEMMING,<br><br>    Defendant and Appellant. | B256683<br><br>(Los Angeles County<br>Super. Ct. No. BA415525) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Leslie A. Swain, Judge.  Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Michael Flemming (defendant) was convicted of carrying a loaded, unregistered handgun (Pen. Code, § 25850, subd. (a)[1]). On appeal, defendant contends that his conviction must be reversed because the trial court erred in denying him his right to self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). We hold that the trial court did not err because defendant's requests to represent himself were equivocal. We affirm the judgment.

# PROCEDURAL BACKGROUND[2]

Following a trial, the jury found defendant guilty of carrying a loaded handgun in violation of section 25850, subdivision (a), and found true an allegation that the firearm was not registered to defendant. The trial court sentenced defendant to county jail for a term of three years. The trial court awarded defendant custody credit, and ordered him to pay various fees, fines, and penalties. Defendant filed a timely notice of appeal.

# DISCUSSION

### A.     Relevant Proceedings

#### 1.     October 28, 2013, hearing

Prior to trial, on October 28, 2013, the trial court held a hearing on defendant's request to replace his counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

[2]     Because defendant's only claim on appeal is that his conviction must be reversed because the trial court denied his requests under *Faretta*, *supra*, 422 U.S. 806 to represent himself, we do not include a statement of facts regarding the count for which he was convicted.

(*Marsden* motion).  During the hearing, defendant said that he did not like his counsel's attitude, stating, "I honestly think he's working with the D.A.  [M]y attorney is telling me he thinks I'm guilty . . . ."  Defendant said there is no evidence he had a gun because the only witness who said he had one told him that the witness did not want to come to court.  The trial court told defendant, "Maybe you roll the dice and you go to trial and the witness comes and you get convicted of two counts.[3]  And so, your max is then, you know, something much greater."

Defendant told the trial court that he wanted his counsel to attempt to obtain video surveillance from the scene of the robberies; said that the victim had lied about the alleged robberies; and said that he did not believe his counsel was helping him.  The trial court told defendant, "What a lawyer's job is at pretrial is to tell you what he or she thinks the chances are that [your] arguments are going to work.  And so—and sometimes I know people in your position ask a lawyer to do things that the lawyer decides really are not fruitful, but I'll—so, it sounds like you just feel like [defense counsel's] urging you to take a deal."

Defendant told the trial court that he was not interested in a plea agreement because he did not commit the robberies.  Defendant complained that he did not like the way his counsel "comes [into the room] and talks to [defendant], kick[ing] up his feet," and defendant said he did not believe that his counsel was helping him.  The trial court responded, "So, you're just saying his personality doesn't instill confidence in you."  Defendant immediately stated, "I'm exercising my *Miranda*[4] rights.  I can't do this."  The trial court replied, "You mean exercise *Faretta* rights."  Defendant responded, "Yeah, *Faretta* rights."

---

**3**  In addition to defendant being charged with carrying a loaded, unregistered handgun, he was charged with two counts of second degree robbery in violation of section 211 based on events alleged to have occurred on May 3, 2013.  The trial court ultimately dismissed the two robbery counts.

**4**  *Miranda v. Arizona* (1966) 384 U.S. 436.

3

Defendant's counsel explained "[negative] things [between him and defendant] started [to occur] after the preliminary hearing" when defendant demanded copies of the reports turned over in discovery, and defendant's counsel agreed to provide defendant with redacted copies of those reports. "Ever since" defendant's counsel was unable to attend a promised visit of defendant in county jail to provide him with copies of the discovery, defendant would tell his counsel that he "let [defendant] down," "was a liar," and "didn't give [defendant] what [defendant] was entitled to . . . ." When defendant's counsel saw defendant in court five days later and provided defendant with the discovery, defendant said that he "wanted a new lawyer."

Defendant's counsel explained to the trial court that he intended to determine whether there was any surveillance video taken during the robberies, but because the alleged incident occurred on a residential street corner and defendant was not arrested until four to five months after the offenses allegedly occurred, defendant's counsel believed that it was highly unlikely that any exculpatory evidence existed. When defendant's counsel conveyed his belief to defendant, defendant interpreted it as defendant's counsel having a "defeatist attitude." Defendant's counsel told the trial court that he would "check it out."

Defendant's counsel said he did not recommend to defendant a plea deal that had been offered by the prosecution because the offer was not much less than defendant's maximum exposure in the case. Defendant's counsel said he intended to emphasize at trial that there were inconsistencies between the preliminary hearing testimony of one of the victims and her statements in a police report. Defendant's counsel stated that there was a "wild card"—a witness who failed to appear at the preliminary hearing. Defendant's counsel stated that "[w]e don't know how good she's going to be at trial."

Defendant told the trial court that he had looked at the discovery provided to him, and he opined that the victim "couldn't see me coming towards her." The trial court stated, "A good lawyer doesn't come in and try to blow smoke and say oh, we're going to win this case because this, this, and this. And that when it really is a case that could go either way, I don't hear him saying that you're going to lose. I don't hear him saying he

4

doesn't want to try this case. On the contrary, he says you should try this case." The trial court explained to defendant that his complaints about the victims' veracity were matters for a jury, and that his counsel was going to develop his case. The trial court denied the *Marsden* motion, and at the conclusion of the hearing stated that defendant "would be crazy to try to do this on [his] own."

### 2. *February 27, 2014, hearing*

On February 27, 2014, during a pretrial conference, defendant's counsel moved the trial court for a trial continuance of 30 days. Defense counsel explained that the prosecution produced in discovery a report that there was "a mixture" of DNA from multiple individuals found on the weapon, and the report was "inconclusive as to whether or not [defendant] was [one of the] source[s]" of the DNA. Defendant's counsel explained that "due to the ambiguity, my office has determined that we have no choice but to investigate." Defendant opposed his counsel's request for a continuance, and said, "I want a speedy trial." Defendant's counsel opined that based on the present evidence, if defendant were to be convicted, there would be an issue on appeal as to whether defendant received effective assistance of counsel.

The trial court stated, "All right. I am going to find good cause for a continuance over the defendant's objection." Defendant immediately stated, "I want to exercise my *Faretta* right." The trial court granted defense counsel's request to speak with defendant off the record. Thereafter, defense counsel told the trial court, "I think we need to do a [*People v.*] *Marsden*[, *supra*, 2 Cal.3d 118] hearing."

The trial court held the hearing pursuant *to People v. Marsden*, *supra*, 2 Cal.3d 118. Defendant told the trial court that he wanted "a speedy trial, so they have to put forth evidence in 15 days." Defendant stated that he had previously been assigned a different attorney whom he would like to have reappointed to the case. Defendant then reiterated that he wanted a "speedy trial," and told the trial court, "If I can't get that, I want to exercise my *Faretta* rights and I go to speedy trial [*sic*] myself." The trial court

5

responded, "That would be crazy." Defendant replied, "I don't want him. I don't even know him."

The trial court explained to defendant that his counsel was requesting a continuance for defendant's benefit because further DNA testing could result in exonerating evidence. The following exchange occurred: "[Defendant]: I don't want him as my lawyer. I want [my prior counsel] back. The Court: You don't get [your prior counsel] back. You don't get to excuse— [Defendant]: I want to exercise my *Faretta* right. The Court: [Defendant], that would be suicidal. [Defendant]: How would that be suicidal? If I go to speedy trial they would have to bring forth evidence. The Court: They're ready for trial. They were ready for trial a month ago. You're the one who is not ready for trial. You can't try this case by yourself. That would be crazy. [Defendant]: My lawyer pushed it back because she said but they would have to come forth with the evidence and I know my fingerprints aren't on there. The Court: So what do you think, that's the only evidence against you? I don't recall what the evidence is in your case, but you're not thinking clearly. [Defendant]: I am thinking clearly. I want to go to speedy trial. I don't want to keep pushing it back."

The trial court told defendant that conducting DNA analysis "takes time." Defendant responded, "By law I can have trial within 10 days by law." Defendant agreed to waive any claim on appeal that his trial counsel rendered ineffective assistance by failing to conduct DNA analysis on the firearm. The trial court told defendant, "Okay. You win. I'm not going to continue the case . . . ." Defendant stated, "No matter what, I don't even want him as my lawyer no more." The trial court denied the *Marsden* motion, stating, "I'm not finding that there's good cause to remove" your counsel.[5]

---

[5] Defendant's counsel who was the subject of the *Marsden* proceedings did not represent defendant at trial. Shortly after the February 27, 2014, hearing, he was replaced as defendant's counsel by a different deputy public defender.

**B.      Analysis**

"'A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive.  A defendant has the right to be represented by counsel at all critical stages of a criminal prosecution.  [Citations.]  At the same time, the United States Supreme Court has held that because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself.  [Citation.]'  [Citation.]"  (*People v. James* (2011) 202 Cal.App.4th 323, 328-329.)

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently.  [Citations.]"  (*People v. Lynch* (2010) 50 Cal.4th 693, 721-722, abrogated on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637.)  "*Faretta* motions must be both timely and unequivocal.  Otherwise, defendants could plant reversible error in the record.  [Citations.]"  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.)

A request made pursuant to *Faretta*, *supra*, 422 U.S. 806 (*Faretta* motion) is not equivocal merely because a defendant requests that his or her counsel be removed and, if not removed, that the defendant wants to represent himself or herself.  (*People v. Michaels* (2002) 28 Cal.4th 486, 524.)  The *Faretta* motion is equivocal, however, if it is made because the defendant wanted to rid himself of appointed counsel.  (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205.)

Our Supreme Court stated that a *Faretta* motion also is equivocal, "'even if the defendant has said he or she seeks self-representation,'" if it is "'made out of a temporary whim, or out of annoyance or frustration.'"  (*People v. Stanley* (2006) 39 Cal.4th 913, 932-933.)  "Courts must 'indulge every reasonable inference against waiver of the right to counsel.'  [Citation.]"  (*Id*. at p. 933.)

A trial court has no discretion to deny a valid, timely *Faretta* motion.  (*People v. Lynch*, *supra*, 50 Cal.4th at p. 726.)  The erroneous denial of such a motion is reversible per se.  (*People v. Butler* (2009) 47 Cal.4th 814, 824.)  We review de novo whether the

7

trial court erred in denying a timely[6] *Faretta* motion.  (*People v. Marshall* (1997) 15 Cal.4th 1, 24-25.)

Defendant's requests to represent himself were equivocal, and therefore the trial court did not err in denying them.  Defendant's *Faretta* motion asserted during the October 28, 2013, hearing to replace his counsel was made out of annoyance or frustration over the trial court characterizing his complaints regarding his counsel as defendant having a mere lack of confidence in him based on his personality.  Immediately after the trial court said it understood that defendant was saying the personality of defendant's counsel does not instill confidence in defendant, defendant said he wanted to represent himself.

Similarly, defendant's *Faretta* motions asserted during the February 27, 2014, hearing were made out of annoyance or frustration at the trial court's initial decision to grant the request by defendant's counsel to continue the trial over defendant's objection.  Immediately after the trial court initially stated that it was going to grant the request by defendant's counsel to continue the trial over defendant's objection, defendant said he wanted to represent himself.  Defendant then said that he wanted a speedy trial and if he cannot have new counsel, he wanted to represent himself.  Then, after the trial court explained to defendant that his counsel was requesting a continuance for defendant's benefit and defendant could not have his prior counsel in place of his present counsel, defendant again stated that he wanted to represent himself.

In addition, defendant's requests to represent himself were equivocal because the record suggests that defendant made his *Faretta* motions because he wanted to free himself of his counsel.  The court in *People v. Scott*, *supra*, 91 Cal.App.4th 1197, affirmed the trial court's denial of his motion for self-representation under *Faretta*, *supra,* 422 U.S. 806 stating "the motion was not unequivocal.  [Defendant] made his *Faretta*

---

[6]    A *Faretta* motion that is untimely—that is, not made within a reasonable time prior to trial—is addressed to the sound discretion of the trial court. (*People v. Marshall* (1996) 13 Cal.4th 799, 827.)  The Attorney General does not contend that defendant's *Faretta* motions were untimely.

motion immediately after the trial court denied his *Marsden* motion, and [defendant's] subsequent comments suggest he made the *Faretta* motion only because he wanted to rid himself of appointed counsel." (*People v. Scott*, *supra*, 91 Cal.App.4th at p. 1205, fn. omitted.) Here, during the October 28, 2013, hearing, defendant stated that he did not like his counsel's attitude; accused his counsel of working with the district attorney; accused his counsel of saying that defendant was guilty; and said that he does not like the way his counsel "comes [into the room] and talks to [him], [and] kick[s] up his feet." At the February 27, 2014, hearing, defendant said that, "I don't want him [i.e., defendant's counsel]. I don't even know him." Defendant also said, "I don't want him [i.e., defendant's counsel] as my lawyer. I want [my prior counsel] back." At the conclusion of the February 27, 2014, hearing, after the trial court denied the request of defendant's counsel to continue the trial to conduct DNA discovery, defendant stated, "No matter what, I don't want him as my lawyer no more." These comments, made during hearings on defendant's request to substitute his counsel under *People v. Marsden, supra,* 2 Cal.3d 118, were obviously aimed at impressing upon the trial court just how dissatisfied defendant was with his present counsel. (*People v. Skaggs* (1996) 44 Cal.App.4th 1, 6-7.) They suggest that defendant made his *Faretta* motions only because he "wanted to rid himself" of his counsel. (*People v. Scott*, *supra*, 91 Cal.App.4th at p. 1205, fn. omitted.)

Defendant cites *People v. Dent* (2003) 30 Cal.4th 213 for the proposition that the trial court's response to defendant's requests to represent himself as being "crazy" "effectively prevented defendant from making his invocation unequivocal." (*Id*. at p. 219.) We disagree.

The trial court's characterization of defendant's requests to represent himself as being "crazy" did not inhibit defendant from continuing to make the requests. At the conclusion of the October 28, 2013, hearing, the trial court said that it "would be crazy" for defendant to try this case on his own. Thereafter, on February 27, 2014, defendant again made a *Faretta* motion, this time immediately after the trial court's initial decision to grant the request by defendant's counsel to continue the trial over defendant's

objection. The trial court again characterized his request as being "crazy," and thereafter, at the same hearing, defendant again requested to represent himself.

This case falls under the cases that hold *Faretta* motions may properly be denied when a defendant's requests to represent himself are equivocal. The trial court did not err in denying defendant's *Faretta* motions.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


KIRSCHNER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.