Filed 8/3/16  P. v. Long CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHAD DUANE LONG,<br><br>    Defendant and Appellant. | D069186<br><br>(Super. Ct. No. SCD259571) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, Allison Hawley and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Chad Duane Long of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1], corporal injury to a former cohabitant or romantic partner (§ 273.5, subd. (a)), and battery (§ 242). As to the first two offenses, the jury found true allegations that Long intended to cause great bodily injury (§§ 667, subd. (e)(2)(C)(iii), 1170.12(c)(2)(C)(iii)) and personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subds. (a), (e)). The jury found Long not guilty of making a criminal threat (§ 422) and was unable to reach verdicts on charges of attempted murder (§§ 187, subd. (a), 664) and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). The trial court declared a mistrial on the latter two charges and dismissed them. In bifurcated proceedings, the court found that Long had suffered a prison prior (§ 667.5, subd. (b)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior strikes (§ 667, subd. (d)). The court sentenced Long to a determinate term of 14 years and an indeterminate term of 25 years to life imprisonment.

Long appeals. He contends the court erroneously ignored his pretrial request to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). We conclude Long did not invoke his right to self-representation under *Faretta* because he did not make a clear and unequivocal request to represent himself. Even if Long did make such a request, he abandoned it by subsequent inaction. We therefore affirm.

---

[1]     Further statutory references are to the Penal Code.

FACTS

Long had previously been in a romantic relationship with Brooke Frease. After they broke up, Long saw Frease out with another man, Patrick Harris. Frease said hello to Long and later texted him. Frease went back to her apartment with Harris. Long showed up at Frease's apartment, and she let him in. Long and Harris began to argue, and Frease asked Harris to leave. Long and Frease spent the night together drinking alcohol, talking, and having sex.

The next morning, Long suggested that they go back to his apartment. After they arrived at Long's apartment, Frease got a "weird feeling" and said she wanted to leave. Long became angry and began punching, kicking, and strangling Frease. Long told Frease she was going to die, and Frease lost consciousness more than once. At some point, Long hit Frease with a piece of wood and tried to stab her with a metal tool.

Frease ran out the front door, but Long pursued her. Long continued to attack Frease, who was bleeding heavily from her nose, mouth, ears, and head. Eventually Long left the scene followed by three neighbors, who restrained him. Frease sought assistance at a nearby apartment. Police arrived and arrested Long.

At trial, Long presented testimony from several police officers who had responded to emergency calls by Frease. Frease claimed in each case to have been attacked, but no charges were filed. One officer believed Frease's injuries in one case were self-inflicted. Long also presented testimony from his mother, who denied that he and Frease were ever in a romantic relationship.

DISCUSSION

I

The day before his preliminary hearing, Long made his first request to represent himself under *Faretta*. The court denied his request as untimely. After the preliminary hearing was continued, however, Long made the request again. The court granted Long's request and relieved his court-appointed counsel. Long represented himself for approximately three months, at which time he requested reappointment of counsel, which the court also granted.

Approximately four months later, and two weeks before trial, Long informed the court he was dissatisfied with his court-appointed attorney. The court held a closed hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). During the hearing, Long spoke at length regarding his concerns, including that his counsel was too busy to handle his case and her investigator had a conflict of interest. After hearing from Long and his counsel, the court denied Long's *Marsden* request. Because Long had mentioned psychiatric medication he had taken, the court asked Long a few questions about that medication and his interactions with a psychiatrist.

Apparently encouraged by this interaction, Long asked the court whether it would be presiding over Long's trial and what the significance of certain statements at the preliminary hearing was. From the transcript, it appears Long thought the hearing was over at this point, but the court told Long there was some business left to attend to. The following colloquy occurred:

"[LONG]: I'm glad to enlighten you on a lot of things going on. I wish you could have seen it my way.

"THE COURT: You know what, I'm not done with you yet.

"[LONG]: And I would like to have—

"THE COURT: I'm not done with you yet.

"[LONG]: I would like to go pro to see if that's possible.

"THE COURT: I'm not done with you yet. We have one more thing to do here. [¶] Could we get [the prosecutor] back in here? This record is sealed. It's not to be transcribed unless ordered by the Court.

"[LONG]: No. Why would it be sealed?

"THE COURT: Because I don't want anyone to see anything inside your case. I want that to be between you and your lawyer only.

"[LONG]: So I'm all ready for an appeal as far as—hopefully you could be my appeal attorney.

"THE COURT: We are bringing the people in from outside."

Back on the public record, the court inquired about the status of plea negotiations. The court asked Long's counsel if the public defender's office remained appointed and if Long's counsel would be attorney of record. Long's counsel responded affirmatively. Long did not speak during this discussion.

After a few housekeeping matters, Long interrupted the proceedings to complain that the schedule appeared rushed and to express his displeasure that the prosecution had filed an amended information adding charges against him. The hearing ended without incident, however, and the record does not show that Long raised the issue of self-representation again.

5

## II

Long argues that his statement during the *Marsden* hearing, "I would like to go pro to see if that's possible," was a request to represent himself under *Faretta*. "To invoke the constitutional right to self-representation, a criminal defendant must make an *unequivocal* assertion of that right in a timely manner. [Citation.] 'The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. . . . A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied.' " (*People v. Barnett* (1998) 17 Cal.4th 1044, 1087 (*Barnett*).) " '[T]he *Farreta* right is forfeited unless the defendant " 'articulately and unmistakably' " demands to proceed in propria persona.' [Citation.] Because the right to counsel is self-executing and persists unless the defendant affirmatively waives the right, the court must indulge every reasonable inference against such a waiver." (*People v. Boyce* (2014) 59 Cal.4th 672, 703 (*Boyce*).) "In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218 (*Dent*).)

*People v. Skaggs* (1996) 44 Cal.App.4th 1 (*Skaggs*) is instructive under the circumstances here. *Skaggs* considered whether the defendant's remark, during a *Marsden* hearing, that "I don't—I'd like to go pro per if I could," was sufficiently unequivocal to invoke the right to self-representation. (*Id.* at p. 5.) *Skaggs* held it was not: "The statement was made during a hearing on a motion to *substitute* counsel and

6

was part of [the defendant's] explanation of the problems he was having with his appointed counsel.  The comment was obviously aimed at impressing upon the court just how dissatisfied [the defendant] was with his present counsel.  Further, the record clearly illustrates the court did not interpret [the defendant's] comments as a *Faretta* motion." (*Id.* at pp. 5-6.)

Viewing the record as a whole, we conclude Long's statement, "I would like to go pro to see if that's possible," was likewise insufficient to invoke Long's right to self-representation under *Faretta*.  The statement itself was neither an unequivocal nor an unmistakable articulation of a request to represent himself.  (*Boyce, supra,* 59 Cal.4th at p. 703; *Barnett, supra,* 17 Cal.4th at p. 1087.)  Instead, it was a fleeting comment, made immediately following his *Marsden* hearing, and it apparently went unnoticed by everyone in the hearing.  (See *People v. Valdez* (2004) 32 Cal.4th 73, 99 (*Valdez*) ["[T]he fact that defendant made only a single reference to the right to self-representation, immediately following the denial of his *Marsden* motion, further supports the conclusion that defendant did not make an unequivocal *Faretta* motion."].)  The court, which was actively engaged in speaking with Long, did not treat Long's comment as a motion under *Faretta*.  Long himself did not follow up on his request.  When the issue of his representation came up later in the same hearing, Long did not mention his alleged desire to represent himself.  Long's previous requests to represent himself, which were ultimately successful, show that Long knew how to invoke this right.  He did not

7

unequivocally or unmistakably invoke that right during the *Marsden* hearing at issue here.[2]

Long argues, in the alternative, that the trial court erred by not holding a hearing on his request for self-representation. We disagree. Where, as here, a defendant has not made an unequivocal and unmistakable request to represent himself, it is not a valid request and no hearing is necessary. (*Skaggs, supra,* 44 Cal.App.4th at p. 7 ["Under these circumstances, the trial court has no *sua sponte* duty to inquire about defendant's intent when his purpose is not immediately clear."]; see *Valdez, supra*, 32 Cal.4th at pp. 99-100.)

Long claims the Supreme Court's holding in *Dent, supra*, 30 Cal.4th 213, requires trial courts to conduct a hearing even when a defendant's request for self-representation is equivocal. In a later case, however, the Supreme Court rejected Long's interpretation of *Dent*. In *Valdez, supra*, 32 Cal.4th 73, the defendant made a statement regarding self-representation that the Supreme Court found equivocal. (*Id.* at pp. 98-99.) The trial court responded, "I wouldn't let you go pro. per. on this case," and did not conduct any inquiry into the defendant's request. (*Id.* at p. 98.) Distinguishing *Dent*, the Supreme Court found no error in the trial court's response. (*Id.* at pp. 99-100.) Long has likewise not shown error here.

Even if Long's statement were an unequivocal and unmistakable invocation of his right to represent himself, Long abandoned his request by not seeking a ruling from the

---

2    Given our conclusion, we need not consider whether a properly-made *Faretta* motion would have been timely.

8

court or raising the request again. "[T]he *Faretta* right, once asserted, may be waived or abandoned." (*People v. Dunkle* (2005) 36 Cal.4th 861, 909 (*Dunkle*).) Abandonment may be found where a trial court does not rule on a *Faretta* motion and the defendant does not raise the issue again. (*Skaggs, supra,* 44 Cal.App.4th at pp. 7-8; *People v. Kenner* (1990) 223 Cal.App.3d 56, 59 (*Kenner*).)

For example, in *Kenner*, the defendant made a timely and unequivocal request to represent himself. (*Kenner, supra,* 223 Cal.App.3d at p. 58.) The trial court set a hearing on defendant's motion, but the defendant did not appear at the hearing because he was in custody in another county. (*Id.* at p. 58.) The defendant missed several more hearings for the same reason. (*Id.* at pp. 58-59.) The defendant eventually appeared, was appointed counsel (who said the *Faretta* motion could be "reserve[d] . . . at the present time"), went through pretrial proceedings, and was convicted following a jury trial. (*Id.* at p. 59.) No further mention was made of the *Faretta* motion. (*Ibid.*) On appeal, the reviewing court held that the defendant had not shown error under *Faretta*. The court explained, "Defendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, as here, we believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion. Therefore, we hold that on this record, where appellant had both time and opportunity to follow up on his request for a hearing on his *Faretta* motion, and failed to do so, he must be deemed to have abandoned or withdrawn that motion." (*Id.* at p. 62.) Similarly, *Skaggs* found abandonment where

9

the defendant made an equivocal request to represent himself, which the court did not rule on, and never mentioned the request again. (*Skaggs, supra,* 44 Cal.App.4th at p. 8.) The court explained, "[The defendant] made a single ambiguous comment about his desire to represent himself. Even if we were to interpret that comment, made in the context of a *Marsden* motion, as an unequivocal request (which we do not), it is clear from the record that the request was never ruled upon. [The defendant's] failure to request such a ruling or to raise the issue again and his silent acceptance of defense counsel's assistance for the remainder of the proceedings in the trial court constitute a waiver or abandonment of any right to self-representation [the defendant] arguably asserted." (*Ibid.*) Both *Kenner* and *Skaggs* were cited with approval by the Supreme Court in *Dunkle, supra,* 36 Cal.4th at page 909.

As in *Kenner* and *Skaggs*, Long did not pursue a ruling on his purported request to represent himself. He stayed silent while the court confirmed his counsel's representation of him, and he never again raised the issue of self-representation in pretrial or trial proceedings. Under these circumstances, even if Long had invoked his right to self-representation under *Faretta*, he waived or abandoned it by his subsequent actions. (*Skaggs, supra,* 44 Cal.App.4th at pp. 7-8; *Kenner, supra,* 223 Cal.App.3d at p. 59; see *Dunkle, supra,* 36 Cal.4th at p. 909.)

Long argues that he did not have a sufficient opportunity to seek a ruling on his purported request to represent himself because trial was scheduled to begin in approximately a week. But Long had ample opportunity later in the same hearing to renew his request. Long spoke up at the hearing to complain about other matters, such as

10

the prosecution's amended information.  He did not mention self-representation.  Long also could have raised his request at the next pretrial hearing or when trial commenced.  He did not.  Under these circumstances, we conclude Long waived or abandoned his request, even if it were sufficient to invoke his right to self-representation under *Faretta*.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

PRAGER, J.[*]

---

[*]	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.